# Wytheville.

## GREEN v. COMMONWEALTH.

### June 15, 1922.

1. APPEAL AND ERROR—*Criminal Cases—Conclusiveness of Verdict;—Robbery—Proof Beyond Reasonable Doubt.*—Upon a prosecution for robbery, defendant's whole defense was an alibi, which he offered testimony to prove. The testimony for the Commonwealth of defendant's presence and of the assault and battery was direct and positive; hence, the verdict of the jury upon that point was conclusive upon the Supreme Court of Appeals. This, however, did not relieve the Commonwealth of the burden of proving the robbery beyond a reasonable doubt.

2. ROBBERY—*Expert and Opinion Evidence—Conclusion of Witness.*—On a prosecution for robbery, the prosecuting witness was asked whether she knew that her pocketbook was taken from her hand, or whether it fell. Witness answered that it must have been snatched from her hand, because it could not have fallen as the chain to which it was attached was wrapped around her wrist. As witness was unconscious at the time from a blow struck by the accused she could not have known, and her answer to the question was a mere opinion, conclusion, or deduction, which she had no right to give.

3. ROBBERY—*Taking—Evidence Held Not Sufficient to Establish the Taking—Case at Bar.*—In the instant case the evidence was direct and positive as to the assault of accused upon the prosecuting witness, and that after the assault she was unconscious, but there was no evidence other than the opinion of that witness that the accused ever, for a moment of time, had her pocketbook and its contents in his absolute control. The only fact to prove that was she had the chain attached to the pocketbook wrapped around her wrist, and the chain was broken.

   *Held:* That the evidence would not support a conviction of robbery.

4. ROBBERY—*Definition.*—Robbery is the taking, with the intent to deprive the owner permanently, of personal property, from his person or in his presence, against his will, by violence or intimidation.

5. ROBBERY—*Taking.*—To constitute robbery the taking must be the securing dominion or absolute control of the property. The absolute dominion must exist at some time, though it be only momentary.

Error to a judgment of the Circuit Court of Chesterfield county.

*Reversed.*

The opinion states the case.

*Wm. F. Denny* and *C. A. McKenzie*, for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney General,* for the Commonwealth.

BURKS, J., delivered the opinion of the court.

The plaintiff in error was convicted of robbing Mrs. Lillie Priddy, and sentenced to the penitentiary for eighteen years.

The petition for the writ of error is so inartificially drawn that it is difficult to say what errors are assigned. Giving the petitioner the benefit of all doubt on this question, he assigns as error that the verdict is contrary to the evidence, and possibly that there was error in not compelling the Commonwealth to produce a receipt for $2 from the A. & B. Clothing Company, given to the accused on the day of the alleged offense, and which he had on his person when arrested, but was taken from him and was not produced at the trial.

[1, 2] The defendant entered a plea of not guilty, but his whole defense was an alibi, which he offered testimony to prove. The testimony for the Commonwealth of his pre ence and of the assault and battery upon Mrs. Priddy is direct and positive, and, hence, the verdict of the jury upon this point is conclusive upon this court. This, however, did not relieve the Commonwealth of the burden of proving the robbery beyond a reasonable doubt. The only witness who testified as to the alleged robbery was Mrs. Priddy. Her account of what took place is substantially as fol-

lows:    About 3:30 o'clock on the afternoon of May 14, 1921, she was walking along a private road, in Chesterfield county, leading from her father's house into the public road to Stop 17 on the Richmond-Petersburg electric line; that she saw the accused approaching from the direction of Stop 17 at a distance of about a city block; that at the time she had her pocketbook in her hand in which there was a ring of the vaule of $30, a fountain pen of the value of $2, and $3.75 in money; that when she saw him approaching, she from force of habit wrapped the chain of the pocketbook around her wrist; that as he passed her, distant about five feet, he tipped his hat and said, "Good evening," just as politely as you please; that just after he passed her he struck her "right down across the neck and shoulder with a stick;" that she must have been unconscious for a minute or two, and when she came to herself he was standing over her, and she thought he was going to choke her and she kicked him with both feet between the knee and hip; that she began screaming and he ran off up the road in the direction from which she had come.    She further testified that the chain of the pocketbook was not broken before she fell, and that "I had it in this hand and it fell across the road and I was lying across the road, my shoulders were in the mud in a rut," and that she did not know how the pocketbook was taken from her hand.    On cross-examination, she testified s follows:

"Q. When the pocketbook was found there, it had the ring in it, didn't it?

"A. Had everything in it.

"Q. There wasn't anything taken from the pocketbook?

"A. There was nothing taken from it.

"Q. Did you see him put the pocketbook down?

"A. No, I did not.

"Q. Didn't see him with it at all, did you?

"A. No, I did not.

"Q. Did you know whether the pocketbook fell from your hand?

"A. No, it didn't fall.

"Q. How far was it from you when it was picked up?

"A. Just right across the road.

"Q. I asked you how far it was?

"A. I don't know how far it was. I think it was about five or six feet.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Q. Mrs. Priddy, do you know whether or not this pocketbook was taken from your hand, or whether it fell when you fell?

"A. It must have been snatched from my hand, because it could not have fallen, because I had the chain wrapped around my wrist just like this (demonstrating) and somebody pulled the pocketbook and broke the chain."

[3] Of course, if she was unconscious at the time she could not know, and her answer to the question was a mere opinion, conclusion or deduction, which she had no right to give. The only fact stated is that she had the chain wrapped around her wrist and that the chain was broken. There is nothing in the record to indicate what the strength of the chain was. The testimony does not show that the accused ever, for a moment of time, had the pocketbook and its contents in his absolute control. The testimony of Mrs. Priddy, if credited by the jury, showed a very violent assault and battery upon her by the plaintiff in error, but does not establish a robbery.

[4, 5] Robbery is the taking, with the intent to deprive the owner permanently, of personal property,

from his person, or in his presence, against his will, by violence or intimidation. Clark's Cr. Law. (3d ed.) 373; 2 Bish. Cr. Law (7th ed.) pp. 654, 655. The taking must be the securing dominion or absolute control of the property. The absolute dominion must exist at some time, though it be only momentary. Clark's Cr. Law (3d ed.) 337-8. "Again, in robbery, as in larceny, there must be an asportation. Consequently, if the one assaulted merely drops the thing, the other, who is apprehended before he takes it up, does not commit robbery. And, says Lord Hale, 'if A have his purse tied to his girdle and B assaults him to rob him, and in struggling the girdle breaks, and the purse falls to the ground, this is no robbery, because no taking. But if B take up the purse; or, if B had the purse in his hand, and then the girdle break, and striving lets the purse to the ground and never takes it up again, this is a taking and robbery." 2 Bish. Cr. Law (7th ed.) sec. 1161.

The testimony in this case does not measure up to these requirements, hence, the judgment of the Circuit Court of Chesterfield county must be reversed, the verdict of the jury set aside, and the case remanded to said circuit court for a new trial.

*Reversed.*