## Richmond

### JESSE JAMES PRITCHARD, JR.

### V.

### COMMONWEALTH OF VIRGINIA

June 17, 1983.

Record No. 821509.

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, and Russell, JJ., and Harrison, Retired Justice.

*William S. Hayes, Jr. (Dillard Associates, P.C.*, on brief), for appellant.

*Robert Q. Harris, Assistant Attorney General (Gerald L. Baliles, Attorney General*, on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

Jesse James Pritchard, Jr., was convicted in a bench trial of robbery and the use of a firearm in the commission of robbery. He appeals both convictions on the ground that the evidence shows no presentation of "deadly force" until after the asportation of the stolen property. Upon an examination of the evidence, we reject his analysis and affirm the convictions.

William Hatton was the proprietor of a service station at Laneview, in Essex County. He testified that during the afternoon of November 26, 1981, an orange Datsun 280-Z stopped at his pumps. Hatton walked over to the Datsun and filled its tank with gasoline at the driver's request, notwithstanding the fact that the driver was wearing a ski mask. He testified:

Q. What happened after that?
A. I went back to the driver's side of the car. I told him his purchase was $14.20 and he looked at me and asked me if I could cash a 20. I said: I think so. And he looked at me again and didn't say a word. The next thing was he pulled out a gun and cocked it . . . . And I ran . . . . Back into the station, and I picked up a piece of pipe. I thought, this is

the wrong thing to do. I laid it back down, and he took off at a high rate of speed.

Hatton noted the Datsun's license number.

A state trooper pursued the orange Datsun about fifteen minutes later, but lost it after a high speed chase near the King William-Caroline County line. The car, which was stolen, was later recovered, having been abandoned in a recently cleared field in Caroline County. Troopers used a tracking dog which followed the defendant's scent from the abandoned car to a trailer a mile away. An occupant of the trailer said he had given the defendant a ride to a nearby hunt club. The defendant was apprehended at the hunt club. There, the police recovered a revolver, a box of bullets, and a ski mask, jacket, and gloves which Hatton identified as similar to those worn by the driver of the Datsun.

Pritchard argues on appeal that he did not commit a robbery because he presented no deadly force or intimidation to Hatton until after the asportation of the stolen gasoline was complete. He contends that asportation occurred when Hatton pumped the gasoline into the Datsun's tank, thereby surrendering "control and possession" to Pritchard. Thus, he says, the taking was unaccompanied by force and amounted to no more than petit larceny. The trial court took the view that asportation was not complete until the defendant drove the car off the owner's premises, and that this maneuver was accomplished by the presentation of a firearm, overcoming any means of resistance by the owner. We agree with the trial court's analysis.

Robbery is a common-law crime in Virginia, although its punishment is prescribed by Code § 18.2-58. It is a crime against the person. Its elements are " 'the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation.' " *Mason* v. *Commonwealth*, 200 Va. 253, 254, 105 S.E.2d 149, 150 (1958).

In *Mason*, Grimes, a proprietor of a television store, apprehensive as to a possible burglary, concealed himself within the darkened store at night. He watched Mason smash a plate glass window, enter the store, pick up a television set, and hand it through the hole in the glass to a confederate, who was standing on the sidewalk outside. While this transfer was taking place, Grimes struck Mason from behind with a board. Mason completed the transfer of the television set from his arms into the arms of his

confederate, turned toward Grimes, threw a portable radio at Grimes, and fired four pistol shots. We held that the asportation of the stolen property was complete before any force or intimidation was used toward Grimes. Noting that violence or intimidation must precede, or be concomitant with, the taking of property from the person or presence of the owner, to constitute an essential element of robbery, we reversed Mason's robbery conviction.

Here, the defendant argues that violence or intimidation used to retain property already in the thief's possession, or to facilitate his escape after he has obtained possession, cannot "bootstrap" a completed larceny into a robbery. Any analysis of this argument requires a consideration of the distinction, in the context of larceny, between possession and custody.

■ The owner of personal property may deliver it to another upon conditions, or in circumstances, which give the recipient bare custody of the property. Constructive possession remains in the owner. Examples are: a watch handed to a friend to time a race, the owner expecting its return at the end of the race; clothing handed to a customer in a clothing store, to try on for size, the owner expecting it to be returned if rejected, paid for if accepted; groceries loaded into a shopping cart in a supermarket, the owner expecting them to be paid for at a cash register before they are removed from the premises. *See* W. Clark & W. Marshall, *Law of Crimes* § 12.06, p. 849 (7th ed. 1967); R. Perkins, *Criminal Law* ch. 4 § 1(B)(2), p. 248 (2d ed. 1969); 2 W. Burdick, *Law of Crime* § 531, p. 295 (1946). Even though the property remains in the control of the custodian, asportation has not been completed until it is carried away in violation of the condition precedent upon which it was delivered. But if the property is carried away before the condition is performed, with the intent to steal it from the owner, the act becomes larceny. *Blunt's Case*, 31 Va. (4 Leigh) 683 (1834). This act converts the recipient's bare custody to possession.

"[T]here can be no trespass against mere custody; trespass can only invade possession and it can be perpetrated as easily by a custodian as by anyone else." W. Clark & W. Marshall, *supra*, at 849. Thus, a custodian, holding the property of another upon condition of prompt payment in cash, has committed no larceny until he carries the goods away in violation of the condition, with requisite intent. If, before carrying the goods away, he uses violence or intimidation to avoid payment, that violence or intimidation pre-

cedes the taking. Custody is converted into possession by the exercise of force, and the offense is robbery.

Pritchard relies on two cases, *Williams* v. *State*, 124 Ohio St. 585, 180 N.E. 58 (1932), and *Kernell* v. *State*, 53 Okla. Crim. 259, 10 P.2d 287 (1932). We find both cases distinguishable from the instant case. They presented situations in which thieves drove into service stations, had gasoline pumped into their tanks by attendants, and drove away without making payment. In both cases the attendants ran after and leaped onto the moving cars to prevent their escape, and were repelled by force. In both cases, the force was held to be subsequent to the asportation. Force was applied only to retain possession already obtained, or to facilitate escape. It was not used to obtain possession of the gasoline.

Here, Pritchard became a bare custodian of the gasoline when it was pumped into the Datsun's tank, upon the condition of payment in cash before it was removed from Hatton's premises. Hatton remained in constructive possession pending payment. When Pritchard produced the firearm, he exerted intimidation upon Hatton. This subdued Hatton's ability to resist and enabled Pritchard to convert his custody into possession by carrying the goods away in violation of the condition, with the intent to steal. The use of force preceded this conversion and enabled Pritchard to obtain possession.

For these reasons, the trial court correctly found Pritchard guilty both of robbery and of the use of a firearm in the commission of robbery. The judgments appealed from will be

*Affirmed.*