Salem

JAMES JEROME BEARD

v.

COMMONWEALTH OF VIRGINIA

No. 1025-93-3

Decided December 13, 1994

360

COUNSEL

Lawrence D. Gott, Public Defender, for appellant.

Donald R. Curry, Senior Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, J.**—James Jerome Beard (Beard) appeals his conviction by bench trial in the Circuit Court of the City of Danville for robbery. Beard contends that the evidence was insufficient to prove robbery because the acts constituting the required element of violence or intimidation did not precede or were not concomitant with the taking of the property of another from her person or presence. Rather, he asserts that the taking was complete before he used force to effect his escape, rendering his criminal acts a larceny and an unrelated battery. Beard further asserts that even if the taking and violence were concurrent, the property taken was never in the actual or constructive possession of the person against whom violence was used. For the following reasons, we disagree

and affirm the conviction.

## I.

## BACKGROUND

On December 23, 1992, Beard went to collect his paycheck from the temporary employment agency through which he occasionally obtained work. While there, he asked permission to visit the restroom. The restroom was located at the end of a hallway containing three offices. After returning from the restroom, Beard stopped at the open door of Pam Payne's office. Payne was the branch manager of the agency. After a brief conversation, Beard told Payne that he needed to return to the restroom. Payne testified that Beard "had been [down the hall] for quite a while," and that out of concern for safety she decided to close the hallway door of Lori Jackson's office, which adjoined Payne's, because Jackson was away from her office.

Payne entered Jackson's office through a communicating door in her own office and discovered Beard "bent down, going through [Jackson's] pocketbook." After observing Beard "flip[] through [Jackson's] wallet" for fifteen seconds to a minute, Payne confronted Beard and asked him what he was doing. When Beard failed to respond, Payne demanded that he deliver the wallet to her. Beard attempted to leave the office with the wallet and when Payne tried to intercept him and recover the wallet, Beard "grabbed [her] and threw [her] against the wall."

Beard and Payne struggled in the office and hallway before Beard broke free. As Beard ran down the hallway in the direction of the front door of the office building, he threw down the wallet. Payne then attempted to block that door, but Beard forced his way past her. When apprehended a short time later, Beard had $619 in his possession, the precise amount that was missing from the wallet, and four dance tickets which were also missing from the wallet.

## II.

## ELEMENTS OF COMMON LAW ROBBERY

■ Robbery, a common law offense in Virginia, is defined as "the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by

violence or intimidation." *Johnson v. Commonwealth*, 209 Va. 291, 293, 163 S.E.2d 570, 572-73 (1968).

■ The predicate element of robbery is the actual taking by caption and asportation of the personal property of the victim. "The degree of asportation necessary to constitute a taking under the common law definition of robbery need only be slight." *Green v. Commonwealth*, 133 Va. 695, 699, 112 S.E. 562, 563 (1922). "Severance of the goods from the owner and absolute control of the property by the taker, even for an instant, constitutes an asportation." *Mason v. Commonwealth*, 200 Va. 253, 256, 105 S.E.2d 149, 151 (1958).

■ The timing of the other elements of robbery, as distinguished from larceny, relate to the instant of the predicate felonious taking. The act of violence or intimidation employed must precede or be concomitant with the taking. *Jones v. Commonwealth*, 13 Va. App. 566, 572, 414 S.E.2d 193, 196 (1992). "If the violence or intimidation preceded or was concomitant with the taking, the offense of robbery is established; if the taking was accomplished before the violence toward or intimidation of [the victim], then it was not robbery." *Mason*, 200 Va. at 255, 105 S.E.2d at 151. Thus, "[n]o violence, no excitation of fear, resorted to merely for the purpose of retaining a possession already acquired, or to effect escape, will, in point of time, supply the element of force or intimidation, an essential [element] of [robbery]." *Id.* at 256, 105 S.E.2d at 151.

■ Finally, the related elements requiring that the property taken belong to "another," and that the taking occur "from his person or in his presence, against his will" have been broadly construed to include taking of property from the custody of another whose right of possession is superior to that of the thief. *See Clay v. Commonwealth*, 13 Va. App. 617, 619, 414 S.E.2d 432, 433 (1992); *Jones*, 13 Va. App. at 572 n.3, 414 S.E.2d at 196 n.3; *Hairston v. Commonwealth*, 2 Va. App. 211, 214, 343 S.E.2d 355, 357 (1986).

### III.

### BEARD'S CASE

Beard asserts that the evidence supports the conclusion that he completed the taking of Jackson's wallet prior to Payne's interven-

tion and his violence against her, rendering his acts merely a larceny and an unrelated battery. The essence of his assertion is that his acts of violence were resorted to merely for the purpose of retaining possession of the wallet and its contents or to effect his escape. We disagree.

■ Although the degree of asportation necessary to constitute a taking under the common law definition of robbery need only be slight, the extent of the action necessary to satisfy that element must be determined upon the facts of a particular case. *See State v. Culver*, 262 A.2d 422, 425 (N.J. Super. Ct. App. Div.), *cert. denied*, 267 A.2d 55 (N.J. 1970) (where a thief has secreted property on his person while in a back room of a store, the asportation is not complete until he has successfully exited through the occupied front room). Because the predicate larceny is an ongoing offense, asportation of stolen property continues and is not complete until the taker severs the property from the absolute control and possession of the victim.

The concept of continuing asportation is significant in distinguishing larceny from robbery. Where violence or intimidation is used concomitant with the caption and/or asportation, a crime that otherwise would be larceny becomes robbery. Where violence or intimidation is a part of a continuous transaction collateral to the caption and asportation, the point in time and circumstances in which the asportation has removed the property from the victim's absolute control so that the continued removal of the property constitutes an escape rather than a "taking" defies a bright-line test. *See Billiot v. State*, 454 So. 2d 445, 462 (Miss. 1984), *cert. denied*, 469 U.S. 1230 (1985) ("Concomitant is defined as something that accompanies or is collaterally connected with something else"). Whether property has been removed from the absolute control and possession of the victim before force or intimidation is used to effectuate the taking is resolved on the facts of a particular case.

Several cases pertinent to the present case are illustrative of this necessary approach to the distinction between a completed larceny and a robbery where violence is a part of a continuous transaction collateral to the caption and asportation of the victim's property. In *Mason*, the thief broke a display window in a retail store, entered the display area, picked up a television set, and handed it to his confederate who was standing outside the window. The victim,

who had been standing inside the store in the shadows and observing the transaction, struck the thief with a board. The thief threw a radio at the victim and shot at him with a pistol. The Court noted that the "facts and circumstances unquestionably show that in time and sequence the taking and asportation [of the television set] occurred before there was any violence or intimidation by throwing the radio or by presentation of firearms." *Mason*, 200 Va. at 257, 105 S.E.2d at 152. The crime of larceny had been completed when the property was given to another outside the store, which removed it from the absolute control and possession of the owner. Accordingly, the Court held that the evidence was insufficient to support a robbery conviction.

In *Durham v. Commonwealth*, 214 Va. 166, 198 S.E.2d 603 (1973), the Court distinguished the facts there from those in *Mason* and reached a different result. In *Durham*, the thief and his accomplice unlawfully entered the home of the victim with the intent to steal personal property. The evidence showed that Durham and his accomplice moved a television set and chair from their usual places, presumably with the intent to steal one or both, but were surprised by the owner. The accomplice stabbed and killed the owner. The Court stated that:

> Where the owner of personal property, or another having custody or constructive possession of the same, interposes himself to prevent a thief from taking the property, and the force and violence used to overcome the opposition to the taking is concurrent or concomitant with the taking, the thief's action constitutes robbery.

*Id.* at 169, 198 S.E.2d at 606.

The Court concluded that these facts supported a conclusion that when the owner surprised the thieves by her appearance in the room, their intention changed from the commission of larceny to robbery, a crime against the person, in order to accomplish their original purpose by overcoming her interference with the taking. Accordingly, the Court held that the homicide was committed in the course of robbery even though the evidence did not delineate the exact sequence of events with respect to the asportation of the two items of furniture. Significantly, the Court further held that unlike *Mason* the facts did not support a conclusion that the "homicide [was] committed for the purpose of retaining pos-

session of property already acquired or to effect an escape." *Id.* at 170, 198 S.E.2d at 607.

Finally, in *Pritchard v. Commonwealth*, 225 Va. 559, 303 S.E.2d 911 (1983), the Court upheld Pritchard's robbery conviction where the evidence showed that he had taken possession of the property of another but had not completed the asportation necessary to complete the taking. Pritchard's car was serviced by the owner of a service station. After refusing to pay for the gas, Pritchard threatened the owner with a gun and drove away. *Id.* at 560, 303 S.E.2d at 912. Contrasting *Pritchard* with *Mason*, the Court noted that in the latter case, the violence occurred only after the defendant had completed the taking and asportation by passing the goods to an accomplice outside the building. *Id.* at 562, 303 S.E.2d at 912-13.

Although Beard cannot be said to have taken custody of Jackson's wallet in the same sense a consumer takes custody of goods prior to paying for them as in *Pritchard*, neither were his actions consistent with a completed asportation as in *Mason*. We need not decide whether Beard's actions of "going through [Jackson's] pocketbook" and moving her wallet constituted a taking sufficient to establish the crime of larceny. Rather, as in *Durham*, the facts support the conclusion that when Payne interposed herself, Beard formed an intent to use violence to accomplish his intended act of stealing. At that point in time, no absolute severance of the property from Payne's possession had occurred and Beard's taking and asportation of it continued until, by exercising violence against Payne, he removed it from her dominion and control. Accordingly, we hold that Beard's use of violence against Payne to accomplish the wrongful caption and asportation of property in Payne's constructive possession constituted a robbery.[1]

---

[1] In his dissent, Judge Elder relies upon *Broady v. Commonwealth*, 16 Va. App. 281, 429 S.E.2d 468 (1993), construing from the facts and holding of that case that a victim cannot have constructive possession of property while that property is in the actual possession of the thief by virtue of a completed larceny. The facts of the present case are readily distinguished. In *Broady*, the thieves obtained possession of the victim's purse and removed it from her immediate dominion and control. Nothing in the record supported a finding that this initial taking was accomplished by force, and the Court presumed that on those facts alone, a conviction for robbery could not be sustained. *Id.* at 288, 429 S.E.2d at 473. In their flight, the thieves lost possession of the purse, which then returned to the constructive possession of the victim, and the thieves were forced to use violence to regain possession. The Court determined that the robbery occurred at that point, without regard to the

Beard further asserts that even if the taking and violence were concomitant, Payne was never in constructive possession of Jackson's property. While we have already indirectly addressed the issue, we explain more fully why Payne constructively possessed Jackson's property. Even before discovering Beard rummaging through Jackson's pocketbook, Payne's possessory right to the pocketbook and its contents were superior to Beard's. As evinced by Payne's concern for the safety of her subordinate's office, Payne as branch manager of the office had a responsibility to safeguard the premises and the property within it against theft. *Cf. State v. Cottone*, 145 A.2d 509, 513 (N.J. Super. Ct. App. Div. 1958), *cert. denied*, 147 A.2d 305 (N.J. 1959) (an employee is in charge of all property on the premises and has a superior right of possession as against all others except the rightful owner). Payne acted upon her responsibility by intervening in Beard's activities and thereby came into constructive possession of Jackson's property before Beard accomplished the act of robbery.

For these reasons, we affirm Beard's conviction.

*Affirmed.*

Coleman, J., concurred.

Elder, J., dissenting.

Although I concur in the majority's holding that Payne's right to possess the wallet was superior to Beard's, I would nevertheless hold the evidence insufficient to support a finding that the violence was concomitant with the taking.

As the majority states, robbery is a common law crime. To prove robbery, the Commonwealth must show a taking and asportation of the property of another, with the intent to steal, from the person or the person's presence, against the person's will, and by violence or intimidation which precedes or is concomitant with the taking. *See, e.g., Mason v. Commonwealth*, 200 Va. 253, 255-56, 105 S.E.2d 149, 151 (1958) (holding that taking and asportation

---

prior events, because there was a new caption and asportation accomplished by violence at that time. *Id.* at 288-89, 429 S.E.2d at 473. Here, Beard had not yet removed the property from Payne's dominion and control when he assaulted her. Accordingly, assuming, without conceding, the accuracy of Judge Elder's construction of *Broady*, the present case is not controlled by that decision because Beard had not yet gained possession by a completed caption and asportation.

were complete prior to the violence); *Jones v. Commonwealth*, 13 Va. App. 566, 572, 414 S.E.2d 193, 196 (1992) (holding that taking was accomplished by means of violence and intimidation). The position taken by the majority expands this common law definition of robbery.

I dissent because I believe the asportation was complete by the time Payne entered the office. As the majority recognizes, proof of asportation requires a "[s]everance of the goods from the owner and absolute control of the property by the taker, *even for an instant*." *Mason*, 200 Va. at 256, 105 S.E.2d at 151 (emphasis added). Any violence occurring after the taking and asportation are complete is insufficient to support a robbery conviction. "No violence, no excitation of fear, resorted to merely for the purpose of retaining a possession already acquired, or to effect escape, will, in point of time, supply the element of force or intimidation, an essential ingredient of the offense." *Id.*

Following these principles, and even accepting as accurate the majority's interpretations of *Mason, Durham*, and *Pritchard*, I nevertheless conclude that the evidence is insufficient to support appellant's conviction because it fails to show violence preceding or concomitant with the taking. Appellant gained actual possession of the wallet and the money inside it before Payne discovered him and attempted to block his escape.[2] Thus, any force or violence occurred after the taking was complete "for the purpose of retaining possession already acquired," and "to effect escape." *See Mason*, 200 Va. at 256, 105 S.E.2d at 151.

Although the majority correctly interprets *Mason*, it fails to apply *Mason*'s principles to the instant case. Just as in *Mason*, where the asportation had been completed when the television set was given to another outside the store, the asportation in the instant case was complete when appellant removed the wallet from Jackson's purse. "Severance of the goods from the owner and absolute control of the property by the taker, *even for an instant*, constitutes an asportation." *Mason*, 220 Va. at 256, 105 S.E.2d at

---

[2] Despite the Commonwealth's contrary contention, it is irrelevant that appellant had not yet removed the money from the wallet, for he had both in his possession. It would be anomalous to hold that the taking would have been complete if appellant had fled with the wallet and its contents but was incomplete because appellant subsequently removed the money and discarded the wallet.

151 (emphasis added). Although I agree with the majority's reluctance to adopt a bright-line test for determining when an asportation is complete, I believe these facts clearly establish an absolute severance of the property from Payne's possession by the time she entered the office. Any violence used by Beard at that point was used to effectuate an escape, as opposed to removing the wallet from Payne's dominion and control.

I also believe this case can be distinguished from *Durham v. Commonwealth*, 214 Va. 166, 198 S.E.2d 603 (1973); therefore, I respectfully disagree with the majority's application of that case to the facts of this case. In *Durham*, the Supreme Court found that the only motive for the homeowner's killing was to prevent interference with the taking of the homeowner's property or subsequent identification of the thieves. Thus, the homicide was not committed for the purpose of retaining possession of property already acquired or to effect an escape, as was the situation in *Mason* and the instant case.

This case also differs from *Broady v. Commonwealth*, 16 Va. App. 281, 429 S.E.2d 468 (1993), in which we upheld the defendant's robbery conviction. In *Broady*, defendant seized the victim's purse from her motel room,[3] and she chased him as he attempted to flee with it. When appellant dropped the purse in the driveway of the motel, both he and the victim tried to pick it up. Defendant then pushed the victim back several feet, enabling him to recover the purse. This Court held that "when the purse fell in the driveway of the motel, [the victim] had constructive possession of [it]." *Id.* at 288-89, 429 S.E.2d at 473. As a result, "the taking was not complete until appellant applied force to [the victim] in the parking lot while [the victim] had constructive possession of the purse. That struggle was sufficient to satisfy the element of violence." *Id.* at 289, 429 S.E.2d at 473.

Implicit in *Broady* is that, as it relates to robbery, the victim did not have constructive possession of the purse while the defendant was in actual possession of it. In the instant case, appellant

---

[3] The Court noted that because the evidence in *Broady* did not show precisely how the defendant initially obtained the purse from the victim or whether any force was used to accomplish the taking, it could "infer nothing from the evidence concerning whether the initial [taking] of the purse from [the victim] in the motel room was by force so as to support a robbery conviction." *Broady*, 16 Va. App. at 288, 429 S.E.2d at 473.

never dropped the wallet, nor did appellant lose actual possession of it. Thus, *Broady* can be distinguished because at no point was Payne able to regain constructive possession of the stolen property as defined by *Broady*.

For the foregoing reasons, I would reverse and remand to the trial court for further proceedings.