COURT OF APPEALS OF VIRGINIA


Present:  Judges Bumgardner, Humphreys and Agee
Argued at Salem, Virginia


DONALD WAYNE GARY

MEMORANDUM OPINION[*] BY
v.    Record No. 1099-00-3        JUDGE ROBERT J. HUMPHREYS
                                    APRIL 17, 2001
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James F. Ingram, Judge

S. Jane Chittom, Appellate Defender (Public
Defender Commission, on briefs), for
appellant.

Steven A. Witmer, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


Donald Wayne Gary appeals his conviction, after a bench

trial, of robbery and use of a firearm in the commission of a

felony.  Gary contends that the trial court erred in finding the

evidence sufficient to convict him of the charges.

"Where the sufficiency of the evidence is challenged after

conviction, it is our duty to consider it in the light most

favorable to the Commonwealth and give it all reasonable

inferences fairly deducible therefrom."  Higginbotham v.

Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

Furthermore, "[t]he judgment of a trial court will be disturbed

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

on appeal only if plainly wrong or unsupported by the evidence." See Code § 8.01-680.

So viewed, the evidence established that on April 10, 1999, Gloria Mills was working at "The Hair Shop" in Danville. The Hair Shop was set up so that it was divided into three separate areas. There were two separate styling rooms, each containing four chairs. The two styling rooms were connected by a small hallway containing hair dryers, and each had their own entrance from the parking lot.

Mills was the only employee working in her styling area on that particular day. She kept her purse and other personal belongings in a supply room that was located off of her styling area. During a break around 11:00 a.m., when Mills had no customers, Mills went to the other styling area to speak with co-workers Robin Jones and Diane Sigmon. There were three customers in that area. One female customer, who was sitting in Jones' styling chair, another female customer who was sitting in Sigmon's styling chair, and a male customer who was sitting in the waiting area.

A few moments after Mills entered the area, she thought she saw a man enter the salon through the door to her styling area. Sigmon also saw the man in her mirror. She testified that he "look[ed] at [her], but kept on walking." Mills, who was a relatively new employee at The Hair Shop, asked Jones if "there was supposed to be a male on the other side of the beauty shop."

-

Jones replied that she did not think so, and the two walked to the other styling area to find the man. They did not see him in the main area, so they walked toward the supply room. Jones looked into the supply room and saw the man "bent over, going through [Mills'] purse." She said "Hey," and the man turned, then walked out of the supply room and stood between her and Mills. Jones thought she had seen the man "take something out" of Mills' purse, so she said, "Hey, wait a minute." The man then turned to face her and she saw that he had a gun. He asked her to open the cash register and "give him all the money." Jones testified that she told the man "we don't have any money here." The man then told Jones to get down on the floor and turned toward Mills.

Mills walked toward the second styling area and the man told Mills, "If you run, I'll shoot you." Mills took a few more steps into the area and told Sigmon, "We're being robbed." When she turned back to face the man, she saw that he had a gun in his hand. The man pulled out the gun, asked again about the cash register, said "something about . . . purse [sic]," and told Sigmon to "get on the floor." He then took a few steps more into the second styling area and reached up to pull a hose over his face, but did not do so. When he noticed the male customer, who had stood up, he fled the store. Mills later determined that her wallet had been taken from her purse. The wallet contained $30, a driver's license and a credit card.

-

Gary was arrested on May 24, 1999.  On May 25, 1999, the police showed the victims a computerized photograph lineup of six people, including Gary.  Mills could not make an identification, but Jones identified Gary as the perpetrator.  Sigmon hesitated when she looked at Gary's picture but identified another individual as the perpetrator.

When shown another photograph lineup on the morning of trial, Jones identified another individual, not Gary, as the perpetrator.  During the trial, neither Mills, Jones, nor the male customer was able to make an in-court identification.  However, Sigmon identified Gary as the perpetrator and testified that she wasn't sure when she looked at the photographs, because they were computer photographs and were very "orange looking."  She further testified she was "sure" her in-court identification of Gary was accurate.

Gary first contends that the identification evidence submitted at trial was insufficient to establish that he was the perpetrator.  We disagree.

The sufficiency of the evidence depends upon the reliability of the identifications.  See Smallwood v. Commonwealth, 14 Va. App. 527, 530, 418 S.E.2d 567, 568 (1992).  The factors to be considered in determining the reliability of an identification include:

> "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy

-

> of the witness' prior description of the
> criminal, the level of certainty
> demonstrated by the witness at the
> confrontation, and the length of time
> between the crime and the confrontation."

Townes v. Commonwealth, 234 Va. 307, 331, 362 S.E.2d 650, 663-64

(1987) (quoting Neil v. Biggers, 409 U.S. 188, 199-200 (1972)),

cert. denied, 485 U.S. 971 (1988).

Here, Gary argues only about the "level of certainty" of

the identifications in contending that "there [was] no

eyewitness identification at trial except that of [Sigmon]" and

that Sigmon's identification is "equivocal at best, because she

had previously failed to pick Gary's picture in a photo array."

As a result, he argues "[t]here is no physical evidence, no

testimony or statement that places him at the scene."  However,

Sigmon's identification was not equivocal at trial.  In fact,

Sigmon testified that she was "sure" her in-court identification

was correct.  Furthermore, although she could not make an

in-court identification, Jones also identified Gary from the

photograph lineup which took place approximately six weeks after

the incident.  There is no evidence that Jones was in any way

equivocal when making the identification at that time.

Based on this evidence, we cannot hold that the trial court

was plainly wrong in finding the identifications sufficiently

reliable to establish that Gary was the perpetrator of the

crime.  It is well settled that "[t]he credibility of witnesses,

the weight accorded testimony, and the inferences to be drawn

-

from proven facts are matters to be determined by the fact finder." Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989).

Gary next argues that the evidence was insufficient to establish that the taking of Mills' property amounted to robbery because "it was not accomplished by force, violence or intimidation directed toward [Mills] before or at the time of the taking." Accordingly, Gary argues that his actions amounted merely to larceny.

Robbery is a common law offense in Virginia and is defined as "the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." Johnson v. Commonwealth, 209 Va. 291, 293, 163 S.E.2d 570, 572-73 (1968).

> The predicate element of robbery is the actual taking by caption and asportation of the personal property of the victim. The degree of asportation necessary to constitute a taking under the common law definition of robbery need only be slight. Severance of the goods from the owner and absolute control of the property by the taker, even for an instant, constitutes an asportation.
>
> The timing of the other elements of robbery, as distinguished from larceny, relate to the instant of the predicate felonious taking. The act of violence or intimidation employed must precede or be concomitant with the taking. If the violence or intimidation preceded or was concomitant with the taking, the offense of robbery is established; if the taking was accomplished before the violence toward or intimidation of [the

-

victim], then it was not robbery.  Thus no violence, no excitation of fear, resorted to merely for the purpose of retaining a possession already acquired, or to effect escape, will, in point of time, supply the element of force or intimidation, an essential [element] of [robbery].

Beard v. Commonwealth, 19 Va. App. 359, 361-62, 451 S.E.2d 698, 700 (1994) (citations omitted).

Here, unlike the perpetrator in Mason v. Commonwealth, 200 Va. 253, 105 S.E.2d 149 (1958), Gary had taken the property from Mills' purse before he pulled out the gun, but had not yet left the premises with the property.  Accordingly, it appears logical and reasonable to infer that while Gary was in the process of carrying out his intended act of stealing, Mills and Jones surprised him by their appearance in the room.  Thus, Gary's intention changed from the commission of larceny to robbery when, in order to accomplish his original purpose, Gary used force to overcome their interference with the asportation of the property, and to maintain the property.  See Pritchard v. Commonwealth, 225 Va. 559, 563, 303 S.E.2d 911, 913 (1983) (holding that defendant committed robbery when his use of force preceded possession and enabled him to obtain possession by completing the asportation of the property).  This conclusion is further supported by the fact that after Gary had pulled out the gun and pointed it at Mills, Jones and Sigmon, he demanded money from the cash register at least two times and made some reference to "purse" or purses, amounting to separate attempts

-

of robbery.  Accordingly, it is clear that the putting in fear and violence were concurrent or concomitant with the larceny, or attempt to commit larceny, and indicative of Gary's intent to commit, or attempt to commit, robbery.

Finally, Gary argues that the evidence was insufficient to establish that he used a firearm in the commission of a felony. Gary again alleges that the identification was unreliable and therefore, that there was no proof he was the gunman.  He further alleges that the action was at most larceny, which he states does not fall within the enumerated felonies listed in Code § 18.2-53.1.[1]  Since we have found that the identification was reliable and that the evidence was sufficient to support a conviction for robbery, we also find the evidence sufficient to support Gary's conviction for the use of a firearm in the

---

[1] Code § 18.2-53.1 provides the following, in pertinent part:

> It shall be unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit murder, rape, forcible sodomy, inanimate or animate object sexual penetration as defined in § 18.2-67.2, robbery, carjacking, burglary, malicious wounding as defined in § 18.2-51, malicious bodily injury to a law-enforcement officer as defined in § 18.2-51.1, aggravated malicious wounding as defined in § 18.2-51.2, malicious wounding by mob as defined in § 18.2-41 or abduction.

-

commission of a felony.  Therefore, we affirm the judgment of the trial court.

<u>Affirmed</u>.
