COURT OF APPEALS OF VIRGINIA

Present:  Judges AtLee, Lorish and Frucci
Argued at Norfolk, Virginia


JENMALL DONTE SIMMONS

MEMORANDUM OPINION* BY
v.      Record No. 0257-24-1                JUDGE LISA M. LORISH
                                           SEPTEMBER 23, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Andrew D. Kubovcik, Judge

Erik A. Mussoni, Senior Trial Attorney (Chesapeake Public
Defender's Office, on briefs), for appellant.

Victoria Johnson, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Jenmall Donte Simmons challenges his convictions for robbery and assault and battery.

Simmons argues that the trial court erred by admitting a 911 call into evidence, instructing the

jury about flight, and denying his motion to strike. We disagree and affirm his convictions.

BACKGROUND[1]

Simmons was dating Ashley Johnson. Johnson's aunt, Glenda Clay, drove Johnson,

Johnson's two young sons, and Clay's own 19-year-old son to Johnson's apartment. When the

family arrived at the apartment complex, Simmons was standing 50 feet away in front of the

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

apartment building. Johnson got out of the car and walked toward the apartment building while carrying several bags and her phone in her hand.

Clay heard yelling while she was unloading items from the trunk of her car and looked up to see Simmons strike Johnson and then drag her along the sidewalk by her hair. When Simmons reached the stairs to the apartment, he began punching Johnson while holding her hair with his other hand. Johnson yelled for Simmons to "get off of her." Simmons let go of Johnson's hair and hit her with both his fists. During the assault, Simmons "snatched" Johnson's phone from her hand. Johnson asked for her phone back, but Simmons refused. Eventually, Simmons stopped striking Johnson and went upstairs to Johnson's apartment.

Clay gave Johnson her cellphone so that Johnson could call 911. Johnson called 911 several minutes later after following Simmons into and then out of her apartment. When the 911 operator asked for her address, Johnson answered "1400 Hideaway" and stated, "my boyfriend just beat me up and he got a gun." When asked to repeat her address, Johnson corrected herself.[2] During the 13-minute call, Johnson reported Simmons's movements around the apartment complex. Johnson told the operator that she was hiding in a tree and repeatedly asked when officers would arrive. At one point, Johnson stated, "I think he sees me," and then, "he's chasing me." Johnson later clarified that Simmons was following her in his car. Johnson hid from Simmons until an officer arrived.

Chesapeake Police Officer Chris Atkins responded to a report of an assault at Johnson's apartment complex. When he arrived, Officer Atkins noticed that Johnson's left eye was swollen and her hand was bleeding. Johnson was speaking with someone on the phone when Officer Atkins arrived, and he overheard the caller on speakerphone tell Johnson, "you fucked my life up. Now I'm going to fuck your life up." The caller also stated, "I'm going to crash you out."

---

[2] "Hideaway" is the name of Johnson's apartment complex, not the street name.

Michael Rucka, the EMT who assessed Johnson at the scene, noticed that Johnson's left cheek was swollen and that she had a couple of lacerations on her hand. Rucka stated that the injury to Johnson's face could have resulted from a fall or a strike.

After learning about the attack, Officer Atkins instructed Johnson to call Simmons.[3] Johnson used Clay's phone to place a call to her phone, which she believed to still be in Simmons's possession. Johnson placed the call by selecting her number from Clay's phone's recent call log, instead of manually typing in her phone number.[4] Simmons answered the call but denied that he had Johnson's phone. Officer Atkins questioned Simmons on the call and asked him if he "want[ed] to tell [his] side of the story." Simmons replied, "it's whatever they say I did."

Later, Simmons stated he had "caught [his] old lady, and [he] spazzed out." Simmons then told Officer Atkins that he wanted to avoid an arrest warrant and asked Officer Atkins to meet him at the police station. Officer Atkins repeatedly gave Simmons the police precinct address on Volvo Parkway. Officer Atkins left the scene and waited for Simmons at the police precinct, but he never appeared. Instead, Simmons was ultimately arrested nine months later on the warrant that Officer Atkins had secured that day.

At his jury trial, Simmons moved to exclude the beginning of the 911 call, arguing that Johnson's statement that, "I need an officer at 1400 Hideaway. My boyfriend just beat me up and he got a gun" was testimonial hearsay and therefore inadmissible under both the hearsay rule

---

[3] Officer Atkins's body worn camera was activated when he arrived at the apartment complex and recorded the call. A redacted copy of the body worn camera video was played for the jury.

[4] The number called was the number that Johnson had contacted Clay from earlier that day. Clay was nearby when Johnson used Clay's phone to place this call.

and the Confrontation Clause.[5]  After listening to the 911 call, the trial court denied Simmons's motion.  The trial court found that, based on the parties' proffers, "the length of time" between when Simmons assaulted Johnson and the 911 call was "within 10 to 15 minutes."  The court also determined that the statements were excited utterances as Johnson's voice was "frantic" while she spoke about the events as they were happening and that she faced an ongoing emergency.  The court further concluded that the statements were nontestimonial, so their admission would not violate the Confrontation Clause.

At the close of the Commonwealth's evidence, Simmons moved to strike both charges, which the trial court denied.  The parties then discussed jury instructions with the trial court. Simmons objected to the Commonwealth's proposed Instruction 10, which provided: "If a person leaves the place of a crime to avoid prosecution, detection, apprehension or arrest, this creates no presumption that the person is guilty of having committed the crime.  However, it is a circumstance which you may consider along with the other evidence."  Simmons argued that there was no evidence as to why he left the scene or that he left to avoid detection, so no evidence supported issuing the instruction.  The trial court disagreed and granted Instruction 10, finding that there was sufficient evidence for the jury to consider why Simmons left the scene.

The jury convicted Simmons of the charges, and the trial sentenced him to 5 years' and 12 months' incarceration with 4 years suspended.  Simmons appeals.

ANALYSIS

I.  Johnson's initial statements in the 911 call were admissible.

Determining the "'admissibility of evidence is within the discretion of the trial court,' and an appellate court will not reject such decision absent an 'abuse of discretion.'" *Williams v. Commonwealth*, 71 Va. App. 462, 487 (2020) (quoting *Tirado v. Commonwealth*, 296 Va. 15, 26

---

[5] The motion was heard outside the jury's presence.

(2018)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Nottingham v. Commonwealth*, 73 Va. App. 221, 231 (2021) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). We review de novo "whether the admission of evidence violates a defendant's confrontation right." *Logan v. Commonwealth*, 299 Va. 741, 745 (2021).

A. Johnson's initial statements fell under the excited utterance exception.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801(c). Hearsay evidence "'is inadmissible unless it falls within one of the recognized exceptions' to the rule against hearsay." *Atkins v. Commonwealth*, 68 Va. App. 1, 7-8 (2017) (quoting *Robinson v. Commonwealth*, 258 Va. 3, 6 (1999)). One such exception is an excited utterance, which our precedent defines as a "spontaneous or impulsive statement prompted by a startling event or condition and made by a declarant with firsthand knowledge at a time and under circumstances negating deliberation." Va. R. Evid. 2:803(2). "Excited utterances prompted by a startling event, and not the product of premeditation, reflection, or design, are admissible, but the declaration must be made at such time and under such circumstances as to preclude the presumption that it was made as the result of deliberation." *Goins v. Commonwealth*, 218 Va. 285, 287 (1977).

"There is no fixed rule by which the question whether the statement is admissible as an excited utterance can be decided." *Hicks v. Commonwealth*, 60 Va. App. 237, 245 (2012) (quoting *Clark v. Commonwealth*, 235 Va. 287, 292 (1988)). "Resolution of the issue depends on the circumstances of each case and rests within the sound judicial discretion and judgment of the trial court." *Id.* (internal quotations omitted). "Although not controlling, the lapse of time between the 'startling event' and a declaration offered in evidence is relevant to a determination whether the declaration was spontaneous and instinctive, or premeditated and deliberative." *Synan v. Commonwealth*, 67 Va. App. 173, 184 (2017) (quoting *Doe v. Thomas*, 227 Va. 466, 471 (1984)).

- 5 -

"Also relevant to the consideration is 'whether the declarant made an exclamation impulsively on his own initiative, or a statement in response to a question.'" *Id.* (quoting *Martin v. Commonwealth*, 4 Va. App. 438, 441 (1987)).

Simmons argues that the trial court erred in admitting Johnson's initial statements to the 911 operator as an excited utterance. He asserts that Johnson's statement, "my boyfriend just beat me up and he got a gun" was not made spontaneously or without time to fabricate. He notes that Johnson was responding to the 911 operator's prompting about the address of her emergency and that her response was a narrative of a past event. He contends that Johnson's statements were designed to get police to arrive promptly and a result of logical deliberation. Simmons further contends that there was no testimony concerning how much time passed between the assault and the 911 call.

Although Johnson's initial statements that "my boyfriend just beat me up" and "he got a gun" included a description of a past event, the totality of the circumstances establish that Johnson was still experiencing an ongoing emergency when she made these statements. Johnson called the 911 operator 10 to 15 minutes after Simmons dragged her along the sidewalk by her hair and repeatedly punched her in the face. Early into the call, it became clear that Johnson was on the phone while hiding from Simmons in a tree. Johnson reported that Simmons was armed and told the 911 operator that he was actively looking for her in the apartment complex. During the length of the call, Johnson repeatedly asked the 911 operator when officers would arrive.

In addition, the fact that statements are given as answers to questions, "rather than relaying a spontaneous narrative, does not indicate [that they] were not excited utterances." *Caison v. Commonwealth*, 52 Va. App. 423, 433 (2008). "To pivot the admissibility of a subsequent statement, however spontaneous, on the question[] of whether it was prompted by an equally spontaneous inquiry would serve no useful purpose. If the question or questioner suggested or

influenced the response, then the declaration may lack the necessary reliability to be admitted." *Id.* at 432 (alteration in original) (quoting *Bowling v. Commonwealth*, 12 Va. App. 166, 176 (1991) (rejecting defendant's argument that the victim's statements, in response to a 911 operator, were not sufficiently spontaneous to be admitted under the excited utterance exception)). The 911 operator's question here, "What's the address of the emergency?" did not prompt or influence Johnson to ask for an officer's assistance, nor to state that her boyfriend had hit her and had a gun.

Thus, the trial court did not abuse its discretion in concluding that the statements were admissible as excited utterances.

B. Johnson's statements were non-testimonial so their admission did not violate the Confrontation Clause.

The Confrontation Clause of the Sixth Amendment "guarantees that a criminal defendant will have the opportunity 'to be confronted with the witnesses against him.'" *Cody v. Commonwealth*, 68 Va. App. 638, 657 (2018) (quoting U.S. Const. amend. VI). But "the Confrontation Clause applies only to 'testimonial' statements." *Id.* "[W]e review *de novo* whether a particular category of proffered evidence is 'testimonial hearsay.'" *Caison*, 52 Va. App. at 434 (quoting *Jasper v. Commonwealth*, 49 Va. App. 749, 755 (2007)). Testimonial statements are the "sort [that] cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006). When determining whether a statement is testimonial, "we objectively evaluate the circumstances in which the encounter occur[ed] and the statements and actions of the parties." *Adjei v. Commonwealth*, 63 Va. App. 727, 744 (2014) (alteration in original) (quoting *Michigan v. Bryant*, 562 U.S. 344, 359 (2011)). The issue is whether the statement was made with the primary purpose of creating "a substitute for trial testimony." *Canada v. Commonwealth*, 75 Va. App. 367, 385 (2022).

"Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police

assistance to meet an ongoing emergency." *Davis*, 547 U.S. at 822. If there is no such ongoing emergency and the primary purpose of the interrogation is to "establish or prove past events potentially relevant to later criminal prosecution," then the statements are testimonial. *Id.* "[W]e objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties" to make this determination. *Bryant*, 562 U.S. at 359. Relevant factors include whether:

- the declarant's statements are "about current events as they [a]re actually happening,"

- a "reasonable listener" would "conclude that the declarant was facing an ongoing emergency,"

- "the elicited statements were necessary to be able to resolve the present emergency" or instead learn about past events, and

- the statements were "frantic" or made in "an environment that was neither tranquil nor safe."

*Wilder v. Commonwealth*, 55 Va. App. 579, 590-91 (2010) (quoting *United States v. Cadieux*, 500 F.3d 37, 41 (1st Cir. 2007)). But "courts should consider the totality of the circumstances when determining whether out-of-court statements are nontestimonial." *Canada*, 75 Va. App. at 383.

Simmons argues that Johnson's initial statements were made in response to a 911 operator's questioning and described a past event. He contends that Johnson made the statements in a place of safety, that she was not in danger when she made them, and that she subsequently left that place of safety. Thus, he concludes that the initial statements to the 911 operator were testimonial.[6] He further claims that he was not a danger to the public because the incident involved a completed domestic dispute.

The totality of the circumstances shows that the primary purpose of Johnson's out-of-court statements to the 911 operator was to summon the police to address an ongoing emergency. No

_____

[6] Simmons does not contest the admission of Johnson's later statements.

- 8 -

evidence suggests that Johnson intended her statements to be a substitute for testimony. Although Johnson blurted out that Simmons had assaulted her, she also reported that he had a gun. The nature of what was asked and answered was necessary to warn police that Simmons, a potentially dangerous and armed man, was at-large in the neighborhood and to aid police in apprehending him.

During the 13-minute 911 call, Johnson spoke with the operator "frantic[ally]" and repeatedly asked when officers would arrive. The 911 operator assured Johnson that police were on their way and directed Johnson to describe Simmons's vehicle. Fearing Simmons, Johnson resorted to hiding from him in a tree. Sometime during the call, Johnson stated that Simmons had spotted her and she could be heard running from her initial hiding spot while exclaiming, "he's chasing me." Later in the call, Johnson clarified that Simmons had chased her while in his vehicle and that she had found a new hiding spot. Johnson remained hidden until she saw the police arrive. A reasonable fact finder could conclude that Johnson was not in a place of safety when she initially called 911 and that Simmons remained an ongoing threat to her for the duration of the call. Thus, Johnson's initial statements to the 911 operator were nontestimonial and we affirm the trial court's decision to admit those statements.

C. Jury Instruction 10 was properly issued.

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019) (quoting *Darnell v. Commonwealth*, 6 Va. App. 485, 488 (1988)). "We review a trial court's decisions in giving and denying requested jury instructions for abuse of discretion." *Holmes v. Commonwealth*, 76 Va. App. 34, 53 (2022) (quoting *Conley v. Commonwealth*, 74 Va. App. 658, 675 (2022)). "[A] litigant is entitled to jury instructions supporting his or her theory of the case if sufficient evidence is introduced to support that theory and if the instructions correctly state the law."

*RGR*, *LLC v. Settle*, 288 Va. 260, 275 (2014) (alteration in original) (quoting *Bennett v. Sage Payment Solutions*, *Inc.*, 282 Va. 49, 55 (2011)).  "[W]hether a jury instruction accurately states the relevant law is a question of law that we review de novo."  *Watson v. Commonwealth*, 298 Va. 197, 207 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 869 (2016)).

"[A] defendant's 'acts to escape, or evade detection or prosecution for criminal conduct may be evidence at a criminal trial[] and a jury may be instructed that it could consider such acts.'"  *Graves v. Commonwealth*, 65 Va. App. 702, 709 (2016) (second alteration in original) (quoting *Turman v. Commonwealth*, 276 Va. 558, 564 (2008)).  Evidence of flight may be considered by the jury "along with other pertinent facts and circumstances" tending to establish guilt, *Hope v. Commonwealth*, 10 Va. App. 381, 386 (1990) (en banc), and the jury may give that evidence "whatever weight it deems proper under the circumstances," *Graves*, 65 Va. App. at 709.

Instruction 10 stated: "If a person leaves the place of a crime to avoid prosecution, detection, apprehension or arrest, this creates no presumption that the person is guilty of having committed the crime.  However, it is a circumstance which you may consider along with the other evidence."  Simmons argues that the instruction was an inaccurate statement of law and lacked evidentiary support.  He contends no evidence indicated that he knew that the police had been called, nor any evidence that he fled to avoid detection, arrest, or prosecution.  Simmons also asserts that his indication that he would turn himself in, but failure to do so, is irrelevant because failing to turn oneself in and leaving the scene of a crime are legally distinct concepts.

The instruction given here, based on the model instruction for flight, made clear that the jury could consider Simmons's flight from the apartment complex without presuming guilt.  *See* 1 Virginia Model Jury Instructions - Criminal Instruction No. 2.300.  Even so, Simmons suggests that the instruction was an incorrect statement of law because there was no evidence that he left the

scene to avoid detection by the police. He points to *Turman*, 276 Va. at 561, where the Supreme Court observed that a similar instruction could be overbroad because anyone not arrested at the scene of a crime would necessarily have to leave the scene at some point.[7] For this reason, merely leaving the scene of the crime is not enough to support the jury instruction. Instead, there has to be some evidence of an intent to avoid prosecution, detection, apprehension, or arrest.

Here, there was more than a scintilla of evidence that Simmons fled to avoid apprehension. The evidence establishes that Simmons beat Johnson, dragged her along the sidewalk by her hair, and took her phone. After doing so, he entered Johnson's apartment and remained there for some period of time. He was still at the apartment complex while Johnson was on the phone with the 911 operator but had left by the time Officer Atkins arrived. A reasonable fact finder could infer that Simmons left the apartment complex to avoid apprehension. This inference is bolstered by his failure to turn himself in after asking Officer Atkins to meet him at the police station to avoid the issuance of a warrant for his arrest. It would be reasonable to infer that Simmons was attempting to evade arrest when he failed to meet Officer Atkins as promised.

D. There was sufficient evidence to support the robbery conviction.[8]

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly

---

[7] Notably the *Turman* instruction permitted the jury to consider a defendant's mere departure from the crime scene as an indicator of guilt—even without evidence of an intent to evade law enforcement—whereas the instruction here properly limited the inference to times when the defendant left the scene *to avoid* prosecution, detection, apprehension, or arrest. 276 Va. at 566-68.

[8] Although Simmons moved to strike both the assault and battery and robbery charges at trial, he challenges only the court's denial of the motion to strike the robbery charge.

wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"Robbery is a common-law crime in Virginia, although its punishment is prescribed by Code § 18.2-58." *Pritchard v. Commonwealth*, 225 Va. 559, 561 (1983). "Robbery is 'the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation.'" *Pena Pinedo v. Commonwealth*, 300 Va. 116, 122 (2021) (quoting *Butts v. Commonwealth*, 145 Va. 800, 811 (1926)). "Whether the defendant has the required intent is a question for the trier of fact." *Welch v. Commonwealth*, 79 Va. App. 760, 768 (2024). "A defendant's intent may be proved by circumstantial evidence, including the defendant's statements and conduct." *Id.*

"It is firmly established that '[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Kelley v.*

*Commonwealth*, 69 Va. App. 617, 629 (2019) (alteration in original) (quoting *Pijor*, 294 Va. at 512). "Circumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

Simmons argues that the evidence did not support his robbery conviction based on the allegation that he took Johnson's phone. In his view, "the chain of circumstances" was broken; he notes that Clay did not see what happened to the phone after he took it from Johnson. He also contends that the evidence was insufficient to establish that Johnson called her own phone at Officer Atkins's request. Lastly, he notes that Johnson did not dial her own number from memory but called a number from Clay's call log. As a result, he argues that the evidence failed to prove that he stole Johnson's phone or that he possessed the requisite intent to steal.

Viewed in the light most favorable to the Commonwealth, the evidence showed that when Clay, Johnson, and the children returned to Johnson's apartment complex, Johnson had her phone in hand as she walked toward her apartment building. Clay saw Simmons punch Johnson repeatedly, then "snatch[ ]" Johnson's phone from her hand. Johnson asked Simmons to return her phone, but he refused. Johnson had to borrow Clay's phone to call 911. When Officer Atkins arrived, Johnson again used Clay's phone to call her own phone. Simmons answered that call, and Clay heard his voice.

A reasonable fact finder could infer that Simmons took Johnson's phone by force with the intent to deprive her of it. Although Simmons denied that he had Johnson's property, the jury was not required to credit that self-serving claim. "[I]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and

- 13 -

to conclude that the accused is lying to conceal his guilt." *Washington v. Commonwealth*, 75 Va. App. 606, 616 (2022) (quoting *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011)). Instead, the jury could reasonably infer that Simmons answered Johnson's phone when Johnson called it from Clay's phone at Officer Atkins's request. The jury could then consider Simmons's denial of possessing Johnson's phone as evidence of his intent to keep it. Thus, the evidence was sufficient to establish that Simmons forcefully took Johnson's phone from her person with the intent to steal it and that he accomplished the taking against Johnson's will.

CONCLUSION

For these reasons, the trial court's judgment is affirmed.

*Affirmed.*