## Richmond

LUTHER DURHAM, JR. v. COMMONWEALTH OF VIRGINIA.

August 30, 1973.

Record No. 8193.

Present, All the Justices.

*Billy J. Tisinger* ( *David G. Simpson; Harrison & Johnston*, on brief), for plaintiff in error.

*Linwood T. Wells, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General*, on brief), for defendant in error.

I'ANSON, J., delivered the opinion of the court.

Luther Durham, Jr.,[1] defendant, was tried by a jury for the murder of Mrs. Annie Snow, convicted of murder of the first degree, and was sentenced to life imprisonment. We denied his petition for a writ of error to the judgment. After defendant's successful habeas corpus proceeding in the United States District Court for the Western District of Virginia, he was again tried for the offense in the court below, found guilty by a jury of murder of the first degree, and his punishment was fixed at life imprisonment. He was sentenced accordingly, and he is here on a writ of error to that judgment.

The sole question before us is whether the evidence was sufficient to warrant the trial court's instruction that a homicide committed

---

1. Also known as Luther Junior Durham.

in the commission of, or an attempt to commit, robbery is murder of the first degree.

The evidence shows that on February 25, 1963, Mrs. Snow and her daughter, Mrs. Waltine Hoover, were found stabbed to death in the Hoover home near Double Toll Gate, in Frederick County, Virginia.

The only evidence as to the actual commission of the crimes was given by the defendant in his written and oral confessions or admissions.

On June 23, 1964, defendant, while an inmate at the Virginia State Penitentiary, voluntarily made a written statement implicating himself and another in the commission of the crimes. In this statement, which was introduced in evidence without objection, Durham declared that he and Otha Howard, who had in his possession a knife with a 3- to 3½-inch blade, traveled by automobile to the Hoover home with the intent to "break in, in other words, to commit larceny." He said they arrived at the Hoover home between 1:30 and 2:00 p.m. on February 25, 1963; that they parked the car in front of the house and both got out and went to the front door; that he knocked on the door three times but no one answered; that he "jimmyed" the door lock and both of them entered the house; that having found no one inside, he went back to the car for a sack and, upon returning, found Mrs. Snow lying in the hallway of the house on the first floor; that she had been "cut all to pieces" from six or seven stab wounds, and appeared to be dead; and that after hearing screams from an unseen woman he quickly left the premises in Howard's automobile but returned approximately ten to fifteen minutes later to pick him up.

Defendant revisited the Hoover home while in the custody of the police on July 14, 1964. The testimony relating to this visit revealed that defendant called attention to the fact that the lock on the front door had been changed. Defendant also said at that time that he remembered going part of the way up the stairs and seeing the screaming lady (Mrs. Hoover) on the upstairs landing with Howard holding her with one hand and a knife in the other.

A police officer, who investigated the homicides less than an hour after they had occurred, testified that he found Mrs. Snow's body lying in the dining room of the home, and that he was unable to see any wounds on her body until artificial respiration was attempted. He found Mrs. Hoover's body on the upstairs landing.

There was no evidence that anything had been actually taken from the house. But a television set and a chair in the living room had been moved from their usual places.

Our inquiry is to determine whether Mrs. Snow was killed during the commission of, or an attempt to commit, robbery.

Code § 18.1-21 provides:

"Murder by poison, lying in wait, imprisonment, starving, or by any wilful, deliberate, and premeditated killing, or the commission of, or attempt to commit . . . robbery . . . is murder of the first degree. All other murder is murder of the second degree."

In Virginia the punishment for robbery is fixed by Code § 18.1-91, but there is no statutory definition of robbery. Hence we look to the common law for its definition. *Butts* v. *Commonwealth*, 145 Va. 800, 811, 133 S.E. 764, 767 (1926); *Mason* v. *Commonwealth*, 200 Va. 253, 254, 105 S.E.2d 149, 150 (1958).

Robbery at common law is defined as "the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." *Jones* v. *Commonwealth*, 172 Va. 615, 618, 1 S.E.2d 300, 301 (1939); *Mason* v. *Commonwealth*, *supra*, 200 Va. at 254, 105 S.E.2d at 150. The phrase "of the personal property of another, from his person or in his presence" has been broadly construed to include the taking of property from the custody of, or in the constructive possession of, another. *Falden* v. *Commonwealth*, 167 Va. 542, 545, 189 S.E. 326, 328 (1937); *State* v. *Butler*, 27 N.J. 560, 589, 143 A.2d 530, 547 (1958).

The degree of asportation necessary to constitute a taking under the common law definition of robbery need be only slight. *Green* v. *Commonwealth*, 133 Va. 695, 699, 112 S.E. 562, 563 (1922).

In *Mason* v. *Commonwealth*, *supra*, 200 Va. at 256, 105 S.E.2d at 151, we said:

"The violence or putting in fear, to constitute the essential element in robbery, must precede, or be concomitant with, the taking of the property from the person or presence of the owner. No violence, no excitation of fear, resorted to merely for the purpose of retaining a possession already acquired, or to effect escape, will, in point of time, supply the element of force or intimidation, an essential ingredient of the offense."

Where the owner of personal property, or another having custody or constructive possession of the same, interposes himself to prevent a thief from taking the property, and the force and violence used to overcome the opposition to the taking is concurrent or concomitant with the taking, the thief's action constitutes robbery. *State v. Butler, supra,* 27 N.J. at 591, 143 A.2d at 547, 548; *State v. Culver,* 109 N.J. Super. 108, 112, 262 A.2d 422, 425 (1970); *Brown v. State,* 61 So. 2d 640 (Fla. 1952), *cert. denied,* 345 U.S. 913 (1953); *State v. Burzette,* 208 Iowa 818, 222 N.W. 394 (1928).

Defendant urges that since his confession, which is the only evidence presented as to the actual commission of the crime, shows that the homicide was committed while attempting to commit larceny, there was no intent to commit robbery and it cannot be inferred that the homicide occurred concurrently or concomitantly with the commission of or attempt to commit robbery. We do not agree.

Confessions are to be weighed like all other evidence and a jury may believe them in whole or in part, as reason may decide. If from the confession itself, or other evidence, it appears to a rational mind that a part is not true, a jury does not have to accept it. *Upshur v. Commonwealth,* 170 Va. 649, 655, 197 S.E. 435, 437 (1938).

An intent to commit robbery does not have to exist for any particular length of time. It may occur momentarily. Whether such an intent did exist is to be determined from the particular facts and circumstances of the acts committed.

Inferences may be drawn from proven facts so long as they are reasonable and justified. *Webb v. Commonwealth,* 204 Va. 24, 34, 129 S.E.2d 22, 29 (1963).

While defendant's confession shows that he and Howard broke and entered the Hoover home with the intent to commit larceny, the jury did not have to accept the statement in its entirety if they did not believe it, especially in light of other evidence and later statements by the defendant which conflicted with his written confession.

It appears logical and reasonable to infer that while Howard and the defendant were in the process of carrying out their intended act of stealing, Mrs. Snow surprised the thieves by her appearance in the room, and their intention changed from the commission of larceny to robbery to accomplish their original purpose by overcoming her interference with the taking, and the homicide was committed in the course thereof. The putting in fear and violence were concurrent or concomitant with the larceny or attempt to commit lar-

ceny and indicate an intent to commit, or an attempt to commit, robbery. There could have been no motive for the killing of Mrs. Snow other than her interference with the taking of the property by her appearance on the scene or for fear of her subsequent identification of the thieves.

This is not a case where a homicide is committed for the purpose of retaining possession of property already acquired or to effect an escape. Hence it is clearly distinguishable from the facts in *Mason* v. *Commonwealth, supra.*

The instruction complained of was in the language of the statute and was warranted under the evidence. The judgment of the court below is

*Affirmed.*