PRESENT:  Hassell, C.J., Lacy, Keenan, Kinser, and Lemons, JJ.,
and Compton and Stephenson, S.JJ.

COMMONWEALTH OF VIRGINIA

                                        OPINION BY
v.  Record No. 030589    SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.
                                      January 16, 2004
ERIC CHERRON JONES


                FROM THE COURT OF APPEALS OF VIRGINIA

     The sole issue in this appeal is whether the evidence is

sufficient to support convictions of robbery and of use of a

firearm in the commission of robbery.

                                I

     In a bench trial in the Circuit Court of the City of

Hampton, Eric Cherron Jones was convicted of robbery and of use

of a firearm in the commission of robbery.[*]  Jones was sentenced

to 10 years in prison, with seven years suspended, for the

robbery conviction and to three years in prison for the use-of-

a-firearm conviction.

     In his appeal before the Court of Appeals, Jones contended,

as he did in the trial court, that, as a matter of law, the

evidence was insufficient to support the robbery conviction and,

therefore, also insufficient to support the conviction for use

of a firearm.  The Court of Appeals reversed both convictions

---

     [*] Jones also was convicted of possession of a firearm after
having been convicted of a felony.  He did not appeal that
conviction.

and remanded the case for a new trial for larceny, if the Commonwealth be so advised. Jones v. Commonwealth, 39 Va. App. 545, 574 S.E.2d 767 (2003). We awarded the Commonwealth this appeal from the judgment of the Court of Appeals.

II

We must view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, the prevailing party at trial. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786, cert. denied, ___ U.S. ___, 124 S.Ct. 444 (2003). On February 17, 2001, Jones entered a store known as Shoe Carnival, in the City of Hampton. Bobby Ray Baker, the store manager, immediately began to watch Jones through a video camera because Jones previously had stolen merchandise from the store. Baker watched as Jones picked up shoes in each aisle of the store. Baker then walked down to the floor to watch Jones. From that vantage point, Baker saw Jones put a pair of boots in his pants and walk out of the store. Jones neither paid for the boots nor had permission to take them.

Baker followed Jones out of the store and approached him in "the [store's] parking lot." When Baker was "a little less than ten feet" from Jones, he asked Jones to return the boots. Jones denied having the boots, and Baker told Jones that he had seen

2

Jones put the boots in his pants.  At that point, Jones withdrew a firearm from a pocket of his jacket, pointed it at Baker, and said, "You better back . . . off me."  Baker was frightened, and he ran and hid behind a parked vehicle.  Jones then fled in a nearby car.

### III

Robbery, a common-law offense, is defined as " 'the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation.' "  George v. Commonwealth, 242 Va. 264, 277, 411 S.E.2d 12, 20 (1991) (quoting Pierce v. Commonwealth, 205 Va. 528, 532, 138 S.E.2d 28, 31 (1964)).  We have held that, in order to establish a robbery, the violence or intimidation "must occur before or at the time of the taking."  Branch v. Commonwealth, 225 Va. 91, 94, 300 S.E.2d 758, 759 (1983).

Jones contends that the violence or intimidation did not precede or occur at the same time as the taking.  More specifically, he asserts that he

> completed the act of petty larceny by concealing the boots in his pants.  Although [the store manager] could have intervened to prevent the shoplifting, he failed to do so and allowed Jones to remove the stolen goods from the store.  The record contains no evidence that Jones employed force to conceal the goods, or for that matter, to remove them from store property.  Instead, . . . Jones resorted to a showing of force when [the store manager] attempted to prevent his escape.

3

The Commonwealth, on the other hand, summarizes its contention as follows:

> [The store manager] followed Jones out of the shoe store and approached him to retrieve the boots that Jones had taken, but for which he had not paid. While Jones' original intent may have been to commit only larceny, his intention changed to robbery. In order to accomplish the theft, Jones introduced a firearm to overcome the interference of the manager with Jones' asportation of the property. The asportation of the victim's property began when Jones picked up the boots inside the store and continued throughout the time that he pointed the gun at [the manager] and carried the boots away from [the manager's] presence.
>
> The trial court properly found that the larceny was continuing when Jones introduced the weapon.

(Footnote omitted.)

In reversing the trial court's judgment, the Court of Appeals ruled that Jones "carried the hidden boots from the store to the parking lot unhindered," and, in doing so, "he severed the boots from the possession of the owner." Jones, 39 Va. App. at 549, 574 S.E.2d at 769. The Court of Appeals concluded that, when Jones produced the firearm, he used it "to assist in retention of the boots or to facilitate [his] escape." Id. For the reasons stated below, we conclude that the Court of Appeals erred.

IV

In support of their contentions, the parties rely in large measure on three of our cases. Those cases are Pritchard v. Commonwealth, 225 Va. 559, 303 S.E.2d 911 (1983); Durham v.

4

*Commonwealth*, 214 Va. 166, 198 S.E.2d 603 (1973); and *Mason v. Commonwealth*, 200 Va. 253, 105 S.E.2d 149 (1958).

In *Mason*, the accused broke a store's display window and entered the store. He picked up a portable television set about two and one-half feet from the hole in the window and handed it to a confederate who was outside the store. Just as the accused was handing the television set to his confederate, the store owner, who had been hiding behind the display window, struck the accused with a board. The accused then threw a portable radio at the owner and fired a pistol four times towards the owner. 200 Va. at 254-55, 105 S.E.2d at 150. The owner testified that " 'the television was out of [the accused's] arms and in the arms of [the accused's] companion before [the accused] threw the radio set and started shooting.' " *Id.* at 255, 105 S.E.2d at 150.

In holding that the evidence was insufficient to support a robbery conviction, we stated the following:

> Here no force was used towards [the owner] and there was no intimidation until accused had taken the television set in his arms and handed the article to a confederate who made off with it. The taking and asportation preceded both the violence, and the intimidation for neither occurred until after accused had passed the article to his companion and been struck by [the owner].
>
> The facts and circumstances unquestionably show that in time sequence the taking and asportation occurred before there was any violence or intimidation by throwing the radio or by presentation of firearms.

*Id*. at 256-57, 105 S.E.2d at 151-52.  Unlike the present case, the accused in Mason had succeeded in removing the merchandise from the presence and constructive possession of the owner before the accused introduced violence toward the owner.

In Durham, a mother and her daughter were found stabbed to death in the daughter's home.  The accused and an accomplice had broken into and entered the home with the intent to commit larceny.  214 Va. at 167, 198 S.E.2d at 605.  We reasonably inferred from proven facts that, while the thieves were in the process of carrying out their intended act, the victims appeared on the scene and surprised them.  It was then that the thieves' intention "changed from the commission of larceny to robbery to accomplish their original purpose by overcoming [the victims'] interference with the taking."  *Id.* at 169, 198 S.E.2d at 606.

In Durham, we stated the following:

> Where the owner of personal property, or another having custody or constructive possession of the same, interposes himself to prevent a thief from taking the property, and the force and violence used to overcome the opposition to the taking is concurrent or concomitant with the taking, the thief's action constitutes robbery.

Id.  We also said that "[a]n intent to commit robbery does not have to exist for any particular length of time.  It may occur momentarily."  Id.

In the present case, Jones, like the thieves in Durham, originally intended to commit larceny.  While Jones was in the

6

process of carrying out that intention and the larceny was continuing, the store manager interposed himself to prevent Jones from taking the merchandise. At that time, Jones produced the firearm to overcome the manager's opposition to the taking, and his crime became robbery, not merely larceny.

Finally, in Pritchard, the proprietor of a gasoline service station filled the tank of the accused's car. When the proprietor asked the accused for payment, the accused produced and cocked a firearm. The proprietor ran into the station, and the accused drove away without paying for the gasoline. 225 Va. at 560-61, 303 S.E.2d at 912.

Pritchard contended that he did not commit a robbery "because he presented no deadly force or intimidation to [the proprietor] until after the asportation of the stolen gasoline was complete." Id. at 561, 303 S.E.2d at 912. Pritchard claimed that the asportation occurred when the proprietor pumped the gasoline into the tank of his car. According to Pritchard, when the pumping of the gasoline ended, the proprietor had surrendered to him " 'control and possession' " of the gasoline; thus, the taking was unaccompanied by force or violence and was merely a petit larceny. Id.

We rejected Pritchard's contention and focused upon the distinction, in the context of larceny, between possession and custody. Id. at 562, 303 S.E.2d at 913. We held that Pritchard

7

had committed a robbery because, when the gasoline was pumped into the car's tank, Pritchard "became a bare custodian of the gasoline" while the proprietor "remained in constructive possession [of the gasoline] pending payment." Id. at 563, 303 S.E.2d at 913 (emphasis added). Concluding, we said the following:

> When Pritchard produced the firearm, he exerted intimidation upon [the proprietor]. This subdued [the proprietor's] ability to resist and enabled Pritchard to convert his custody into possession by carrying the goods away in violation of the condition, with the intent to steal. The use of force preceded this conversion and enabled Pritchard to obtain possession.

Id.

The rationale in Pritchard applies in the present case. When Jones seized and hid the boots, he had custody of them, not possession. The store manager, as he observed Jones, retained constructive possession of the merchandise. As Jones' larceny was continuing, but before his custody was converted into possession, the manager interposed himself to prevent the theft. When Jones introduced force and violence by producing the firearm, his crime was transformed into robbery.

V

In sum, for the reasons stated, we hold that the evidence is sufficient to support the convictions of robbery and of use of a firearm in the commission of robbery. Accordingly, the judgment of the Court of Appeals will be reversed, the case will

8

be remanded to the Court of Appeals with direction that the Court of Appeals remand the case to the trial court, and the trial court's judgment shall be reinstated.

<u>Reversed and remanded</u>.