Present:  Koontz, Kinser, Lemons, Goodwyn, and Millette, JJ., and Carrico and Russell, S.JJ.

DEKOTA WILLIAMS

v.  Record No. 082477     OPINION BY JUSTICE DONALD W. LEMONS
                                November 5, 2009
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

Dekota Williams ("Williams") was convicted of robbery in violation of Code § 18.2-58 in a bench trial in the Circuit Court of the City of Newport News and was sentenced to 15 years in prison with 10 years suspended.  In this appeal, we consider the sufficiency of the evidence to convict Williams of robbery.

I.  Facts and Proceedings Below

On January 15, 2007, James Fox ("Fox"), who was 15 years old at the time of trial, and three of his friends, including 17 year old Robert Brown ("Brown"), Nick Nance ("Nance"), and another boy identified only as "Julius," were skateboarding in the parking lot of an abandoned automobile dealership in Newport News.  Brown was using his digital camera to film his friends while they were skateboarding.

The boys stopped to eat lunch and were subsequently approached by three young men, one who wore a "black hoodie," another who wore a "red hoodie," and Williams who was identified as wearing a "green and black plaid jacket."  One

of the men took Nance's bike and began riding it.  Fox and his friends directed the man to get off the bike.  In the ensuing moments, the man in the "red hoodie" ran behind Brown and "snatched" his camera from where Brown had laid it.  The man in the "red hoodie" ran at "full sprint" away from the scene.  Fox pursued him for approximately 150 feet before giving up the chase.

Fox had placed his cellular telephone ("cell phone") on a "ledge" a few feet away from where the boys had been eating lunch.  As Fox was returning, his friend, Brown, told him that he saw Williams take his cell phone.  Williams admitted that he was using the cell phone when Fox and Brown confronted him.

Fox demanded that Williams return the cell phone to him.  Williams refused and stated, "[t]his is not yours.  How do you know this is yours?"  As Fox and Brown approached Williams, Williams put the cell phone in his pants pocket.  Fox demanded that Williams return the cell phone to him.  At that time, Williams reached into the waistband of his pants and, according to Brown, appeared to be retrieving a "flat, black object" that Fox thought was a gun.  Brown testified that when Williams pulled the "flat, black object" out of his pants he asked Brown and Fox if they "had a problem."  The boys abandoned their attempt to retrieve Fox's cell phone and ran

away.  Brown used his cell phone to call his mother, who, in turn, called police.

Approximately four minutes later, Fox's cell phone was returned to him by Julius.  Fox testified, "[m]y friend Julius had walked back and, I guess, talked to them and had gotten it back for me."  Brown testified and corroborated Fox's testimony in every significant aspect.

Police Sergeant Frank Novack ("Novack") apprehended Williams, who spontaneously exclaimed, "I know what this is about . . . It's us f**king with those skateboarders." Williams was subjected to a pat down search and a pair of black pliers was found in the waistband of his pants. Williams admitted to Detective W. T. Filer ("Filer") that although Fox's cell phone had been returned, Williams had pawned Fox's cell phone charger at a nearby pawnshop.  Also, Filer testified that he recovered Brown's camera that had been "pawned along with a cellular phone charger by Mr. Williams."

At trial, Williams testified that he did take the cell phone from the "ledge" and used it to make a telephone call. He admitted responding to Fox's demand for the return of the cell phone by saying, "[t]his is not yours.  How do you know this is yours?"  Williams' version of what happened next was quite different from the testimony of Fox and Brown.  Williams testified that he passed the cell phone to his brother who

handed the phone to Fox.  Williams stated that Fox had the cell phone when he walked away.  Williams was impeached at trial and admitted having been convicted of "a crime involving lying, cheating or stealing."  Williams' brother, Dion Williams ("Dion"), testified at trial that even though Williams used the cell phone, Williams gave it to Dion and he "gave it to the boy."

The trial court found Williams guilty of robbery. Williams appealed to the Court of Appeals, which denied his petition by per curiam order on the grounds that the evidence was sufficient to sustain the judgment.  Williams v. Commonwealth, Record No. 0041-08-1 (Sept. 30, 2008).  A three-judge panel of the Court of Appeals thereafter denied Williams' petition for the reasons stated in the per curiam order.  Williams v. Commonwealth, Record No. 0041-08-1 (Nov. 17, 2008).  We granted Williams an appeal on the following assignments of error:

1. The Court of Appeals erred in affirming appellant's conviction of robbery as the taking did not occur in the presence of the victim, who was one hundred and fifty feet away from the telephone when the taking occurred.

2. The Court of Appeals erred in affirming appellant's conviction of robbery as no threat nor intimidation occurred prior to or concomitant with the taking.

4

3. The Court of Appeals erred in affirming the appellant's conviction of robbery as no asportation occurred as the appellant never moved from the site from which he had picked up the cell phone from the ledge.

4. The Court of Appeals erred in affirming the appellant's conviction of robbery as appellant never left the site from which he had taken the cell phone prior to returning the cell phone to its owner, thus he had no intent to deprive the owner of his property.

## II. Analysis

### A. Standard of Review

On appeal, "[w]e must view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, the prevailing party at trial." Commonwealth v. Jones, 267 Va. 284, 286, 591 S.E.2d 68, 69 (2004). Furthermore, "[w]hen reviewing the sufficiency of the evidence to support a conviction, the Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it." Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008).

### B. Sufficiency of the Evidence

"Robbery, a common-law offense, is defined as 'the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will,

5

by violence or intimidation.' " Jones, 267 Va. at 286, 591 S.E.2d at 70 (quoting George v. Commonwealth, 242 Va. 264, 277, 411 S.E.2d 12, 20 (1991) (quotation marks and citation omitted)). Williams argues that the evidence was insufficient to convict him of robbery because the taking was not from the victim's person, the perceived threat or intimidation occurred after the taking, there was no proof of asportation, and the Commonwealth failed to prove intent beyond a reasonable doubt. We disagree and affirm the judgment of the Court of Appeals.

In Jones, the defendant entered a store, put a pair of boots in his pants, and walked out of the store without paying for the boots and without permission to take the boots. 267 Va. at 286, 591 S.E.2d at 69. The store manager, who was watching Jones via video camera and recognized him as having previously stolen items from the store, "walked down to the floor to watch Jones" and saw Jones put the boots in his pants and leave the premises. Id. The store manager "followed Jones out of the store and approached him in 'the [store's] parking lot'" when Jones "withdrew a firearm from a pocket of his jacket, pointed it at [the store manager] and said, 'You better back . . . off me.' " Id. at 286, 591 S.E.2d at 69-70. Jones "fled in a nearby car." Id. at 286, 591 S.E.2d at 70. The store manager "was frightened, and he ran and hid behind a parked vehicle." Id.

6

In _Jones_ we held that the defendant

> originally intended to commit larceny. While Jones was in the process of carrying out that intention and the larceny was continuing, the store manager interposed himself to prevent Jones from taking the merchandise. At that time, Jones produced the firearm to overcome the manager's opposition to the taking, and his crime became robbery, not merely larceny.

_Id._ at 289, 591 S.E.2d at 71. We also stated that

> [w]hen Jones seized and hid the boots, he had custody of them, not possession. The store manager, as he observed Jones, retained constructive possession of the merchandise. As Jones' larceny was continuing, but before his custody was converted into possession, the manager interposed himself to prevent the theft. When Jones introduced force and violence by producing the firearm, his crime was transformed into robbery.

_Id._ at 290, 591 S.E.2d at 72.

As in _Jones_, here, Williams' actions started as a larceny but became a robbery. When Williams took Fox's cell phone without permission from a "ledge" where Fox had left it, Williams committed a larceny. _Britt v. Commonwealth_, 276 Va. 569, 574, 667 S.E.2d 763, 765 (2008) (Larceny is a common law crime defined as "the wrongful or fraudulent taking of another's property without his permission and with the intent to permanently deprive the owner of that property"). We have held that larceny is a continuing crime. _Jones_, 267 Va. at 287, 591 S.E.2d at 70; _Smolka v. Second Dist. Comm. of Va. State Bar_, 224 Va. 161, 165, 295 S.E.2d 267, 269 (1982);

7

_Dunlavey v. Commonwealth_, 184 Va. 521, 525, 35 S.E.2d 763, 765 (1945).  However, as _Jones_ demonstrates, larceny may ripen into robbery.

Here, Williams' larceny became a robbery when Fox and Brown confronted Williams, demanded return of the cell phone, and Williams reached into his waistband and pulled out a "flat, black object."  Brown testified that Williams asked them if they "had a problem."  Fearing that Williams had a gun, the boys quickly left and called Brown's mother to tell her they had just been robbed.

While Williams argues that he cannot be found guilty of robbery because he did not take the cell phone from Fox's person or in Fox's presence, his argument fails because he first committed larceny, a crime that does not require the element of taking from the victim's person or presence. _Britt_, 276 Va. at 574, 667 S.E.2d at 765.  However, as in _Jones_, Williams' larceny was continuing, and before Williams' custody of the cell phone converted into possession, Fox interposed himself to prevent the theft.  Further, when Williams introduced the threat of force or violence by reaching into his waistband, showing a "flat, black object" and asking if Fox and Brown "had a problem," his offense matured into robbery.

8

Williams also argues that there was insufficient evidence to convict him because there was no evidence of asportation and the Commonwealth failed to prove beyond a reasonable doubt that Williams had the requisite intent to commit robbery. Williams is correct that under Virginia law, "in robbery, as in larceny, there must be an asportation." Green v. Commonwealth, 133 Va. 695, 699, 112 S.E. 562, 563 (1922). Asportation is defined as "carrying away of the goods. Severance of the goods from the owner and absolute control of the property by the taker, even for an instant, constitutes an asportation." Mason v. Commonwealth, 200 Va. 253, 256, 105 S.E.2d 149, 151 (1958). Here, the evidence demonstrates that the cell phone was taken by Williams from a "ledge" and put into Williams' pocket. At this point the object was severed from the owner and in the absolute control of Williams. This act constituted asportation sufficient to satisfy this element of the offense. Furthermore, the evidence taken in its entirety, including the asportation of the object, was sufficient to prove intent to deprive Fox of his property.

The record also reveals sufficient evidence of intent to commit robbery. We have held that "'an intent to commit robbery does not have to exist for any particular length of time. It may occur momentarily.'" Jones, 267 Va. at 289, 591 S.E.2d at 71 (quoting Durham v. Commonwealth, 214 Va. 166,

9

169, 198 S.E.2d 603, 606 (1973)). Here, as in Jones, Williams originally intended to commit larceny; however, as the larceny was continuing and as the circumstances changed, his mens rea changed to an intent to deprive Fox of his cell phone by intimidation.

### III. Conclusion

For the reasons stated, we hold that there was sufficient evidence to support the trial court's conviction of Williams in the bench trial for the crime of robbery. Accordingly, we will affirm the judgment of the Court of Appeals.

Affirmed.