COURT OF APPEALS OF VIRGINIA

Present: Judges Frank, Humphreys and Chafin
Argued by teleconference

**UNPUBLISHED**

TRAMONE ANTONIO JOHNSON

MEMORANDUM OPINION[*] BY
v.       Record No. 2319-12-1        JUDGE TERESA M. CHAFIN
MAY 27, 2014

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Marjorie T. Arrington, Judge

Stephen P. Givando for appellant.

Susan Baumgartner, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

In a bench trial, Tramone Antonio Johnson ("appellant") was found guilty of malicious

wounding and attempted robbery. On appeal, appellant challenges the sufficiency of the

evidence to support his convictions and argues that the trial court erred in denying his motion to

set aside its verdicts because of the Commonwealth's failure to disclose exculpatory evidence.

For the reasons that follow, we affirm the decision of the trial court.

I. BACKGROUND

On the afternoon of November 14, 2010, Nyshawn Mikell was walking on a concrete

path behind a shopping center when he saw appellant, Harvey Smith,[1] and Jabre Bell

approaching him. Appellant said Smith's name loudly and then said, "He like you," referring to

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Harvey Smith, also known as Harvey Williams, was convicted in connection with this
incident of attempted robbery and malicious wounding at a separate bench trial held on August
15, 2011. This Court affirmed his convictions. See Smith v. Commonwealth, No. 1266-12-1,
2013 Va. App. LEXIS 383 (Va. Ct. App. Dec. 17, 2013).

Mikell. While walking four or five feet in front of the three men, Mikell saw shadows and heard "low noises, like, if someone was following" him, which prompted him to walk faster. The three men, however, crept up behind Mikell and "jumped" him, with Smith striking him in the jaw. Mikell testified that he "blacked out"[2] and fell to the concrete, while all three men continued hitting, punching, and kicking him. They shoved his face into the concrete, which chipped one of his teeth and damaged another. Mikell's hands and face were injured, and his lips were "busted wide open." Someone reached into Mikell's front pockets and possibly his back pants pockets as well. As Mikell was staggering and attempting to rise from the ground, he was pushed back down and beaten some more. Eventually, Mikell "zoned back into. . . consciousness" and ran to a friend's home. His friend's parents called the paramedics and the police. Following the attack, Mikell received eight stitches in his chin.

When speaking with the police, Mikell described his attackers, all of whom he recognized from school, and provided Smith's name. Later, Mikell identified their photographs in a yearbook.

Bell testified against appellant pursuant to a plea agreement and partially corroborated Mikell. Bell stated he, appellant, and Smith were walking on the path behind the shopping center when appellant told Smith that Mikell thought Smith was cute, and then one of them dared the other to hit Mikell. Bell testified he kept walking and, when he looked back from fifteen to twenty feet away, he saw appellant and Smith fighting Mikell. They fought about thirty seconds, and at some point Mikell fell to the ground. Bell claimed he did not know how the altercation ended, but he left with appellant and Smith. He further claimed that he did not touch Mikell, but

---

[2] As the trial court noted both in its ruling and at a later hearing, the victim repeatedly but incorrectly referred to himself as "unconscious" or "blacked out" despite remaining fully aware of the attack and able to relate what had happened to him.

also stated that his guilty pleas to attempted robbery and assault and battery by a mob were not pleas to offenses he did not commit. Bell denied that anyone tried to take anything from Mikell.

## II. ANALYSIS

### A. STANDARD OF REVIEW

When the sufficiency of the evidence is challenged on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). See also Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

### B. VICTIM'S IDENTIFICATION OF APPELLANT AS A PERPETRATOR

On appeal, appellant contends that the Commonwealth did not sufficiently prove appellant's identity as one of Mikell's attackers. "'At trial, the Commonwealth bears the burden of proving the identity of the accused as [a] perpetrator beyond a reasonable doubt.'" Cuffee v. Commonwealth, 61 Va. App. 353, 364, 735 S.E.2d 693, 698 (2013) (quoting Blevins v. Commonwealth, 40 Va. App. 412, 423, 579 S.E.2d 658, 663 (2003)); see Brickhouse v. Commonwealth, 208 Va. 533, 536, 159 S.E.2d 611, 613-14 (1968). "The factors set forth in Neil

v. Biggers, 409 U.S. 188 (1972), are used to determine 'whether the identification evidence is sufficient, standing alone or in combination with other evidence, to prove beyond a reasonable doubt' the identity of the perpetrator." Cuffee, 61 Va. App. at 364, 735 S.E.2d at 698 (quoting Brown v. Commonwealth, 37 Va. App. 507, 522, 559 S.E.2d 415, 423 (2002)).

> "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

Id. at 364, 735 S.E.2d at 698-99 (quoting Biggers, 409 U.S. at 199-200). "Whether an identification is reliable 'depends on the totality of the circumstances.'" Brown, 37 Va. App. at 523, 559 S.E.2d at 423 (quoting Satcher v. Commonwealth, 244 Va. 220, 249, 421 S.E.2d 821, 839 (1992)). "[T]he credibility of the witnesses and the weight to be accorded their testimony are matters solely for the fact finder who can accept or reject the testimony in whole or in part." Cooper v. Commonwealth, 30 Va. App. 26, 29, 515 S.E.2d 320, 321 (1999) (citations omitted).

Appellant argues that Mikell's identification of him as a perpetrator is insufficient because Mikell acknowledged at trial that he never actually saw appellant strike him or feel through his pockets. Mikell testified that he was attacked from behind, that he was knocked unconscious by the first punch from behind, and that he was being beaten by three people throwing punches when he regained consciousness. However, Mikell also testified that he saw appellant, Smith, and Bell, all whom he recognized from school, approaching and "eying" him before he was struck from behind with the first punch. Thus, the record supports the inference the victim was not completely unable to witness his attackers as the crime began. See Biggers, 409 U.S. at 199.

Furthermore, Mikell's testimony identifying appellant as a perpetrator was partially corroborated by Bell's testimony. Testifying pursuant to a plea deal, Bell placed himself,

appellant, and Smith at the scene of the crime and described appellant and Smith as being in a physical altercation with Mikell. The trial court specifically noted that it had observed Bell's reluctance to testify and considered the possible reasons for, and significance of, that reluctance, because "[i]t was my obligation to consider the demeanor of the witnesses and to consider the totality of all the evidence presented to me." The credibility of the victim's testimony and the weight to be accorded it were solely matters for the trial court (acting as the factfinder here), as the trial court had "the opportunity to see and hear that evidence as it [was] presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 731 (1995).

Thus, there were sufficient facts supporting appellant's identity as an active participant in the crimes. See Cuffee, 61 Va. App. at 365, 735 S.E.2d at 699 (explaining that, while the witness was not "[one] hundred percent" certain that the defendant was the shooter, other aspects of her testimony corroborated her identification of the defendant as the shooter); see also Stamper v. Commonwealth, 220 Va. 260, 273, 257 S.E.2d 808, 818 (1979) (explaining that the "combined force of many concurrent and related circumstances" may "lead a reasonable mind irresistibly to a conclusion" (internal quotation marks and citation omitted)).

C. MALICIOUS WOUNDING

Appellant contends the trial court erred in convicting him of malicious wounding because the evidence proved only a single blow by an unknown assailant, with all injuries caused by Mikell's fall to the ground. And so, appellant argues, there was no evidence presented to show that he intended to maim, disfigure, disable, or kill Mikell. We find that this argument is without merit.

"If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall . . . be guilty of a Class 3 felony." Code § 18.2-51. "To be guilty under Code § 18.2-51, a person must intend to

permanently, not merely temporarily, harm another person." Johnson v. Commonwealth, 53 Va. App. 79, 101, 669 S.E.2d 368, 378 (2008) (citation omitted). While intent to maim ordinarily may not be presumed from a blow with a bare fist, sufficient violence and brutality, even in a bare-fisted assault, may demonstrate intent to maim, disfigure, disable, or kill. Burkeen v Commonwealth, 286 Va. 255, 259, 749 S.E.2d 172, 175 (2013); Johnson, 53 Va. App. at 101-02, 669 S.E.2d at 379.

Intent is often proven circumstantially. Carter v. Commonwealth, 280 Va. 100, 105, 694 S.E.2d 590, 594 (2010); see also Wilson v. Commonwealth, 249 Va. 95, 101, 452 S.E.2d 669, 673-74 (1995) (intent may be proven by a defendant's acts or statements). "It is permissible for the fact finder to infer that every person intends the natural, probable consequences of his or her actions." Ellis v. Commonwealth, 281 Va. 499, 507, 706 S.E.2d 849, 853 (2011). In other words, a defendant's "intent must be determined from the outward manifestation of his actions leading to usual and natural results, under the peculiar facts and circumstances disclosed. This determination presents a factual question which lies peculiarly within the province of the [fact finder]." Ingram v. Commonwealth, 192 Va. 794, 801-02, 66 S.E.2d 846, 850 (1951).

In Johnson, this Court affirmed a conviction for malicious wounding where the defendant delivered a single blow with a bare fist to the head of the victim, knocking the victim to the ground and resulting in a concussion, two cuts, and a sore shoulder. Johnson, 53 Va. App. at 87, 669 S.E.2d at 371-72. The totality of the circumstances demonstrated the defendant's intent. First, the attack was unprovoked, and the unsuspecting victim was defenseless and thus was more likely to suffer serious injury; "[t]he lack of provocation [was] significant evidence of an intent to seriously harm." Id. at 104, 669 S.E.2d at 380. Second, the Court noted the victim's "significant" injuries and also that the attacker "employed [such] great force in striking" his victim that he fell to the floor as well, and the use of such force also "indicates an intent to

severely harm." Id. Lastly, the defendant in that case made statements after the attack indicating that the attack was premeditated and was intended to punish the victim for perceived injustices. Id.

Similarly, in Burkeen, the Supreme Court noted that, "It is proper for a court to consider not only the method by which a victim is wounded, but also the circumstances under which that injury was inflicted in determining whether there is sufficient evidence to prove an intent to maim, disfigure, disable or kill." Burkeen, 286 Va. at 260-61, 749 S.E.2d at 175. In Burkeen, the victim was struck "while he was defenseless and not expecting such a blow." Id. The defendant sought to continue the attack and was stopped only by another's intervention. Hence, there was sufficient evidence of his intent to maim. Id. at 261, 749 S.E.2d at 176.

In this case, Mikell was attacked without provocation. The only interaction between Mikell and his attackers was appellant's comment made about him that preceded the attack, and then a dare between appellant and Smith to start the attack. Mikell was then struck from behind with enough force to knock him to the ground. It is a reasonable inference that appellant was then one of the three people beating Mikell as he lay on the ground, struggling to rise and instead having his face ground into the concrete. Here, Mikell received eight stitches and suffered a permanently damaged tooth. Moreover, in addition to the inherent viciousness of a three-on-one attack, the trial court had the opportunity to observe both appellant and Mikell and consider their relative sizes in determining intent. See Williams v. Commonwealth, 13 Va. App. 393, 398, 412 S.E.2d 202, 205 (1991) (even if not reflected in the record, a trial court has the ability to observe an attacker and his victim's relative sizes when considering intent).

Appellant argues that the testimony merely shows that Mikell was struck once by Smith, causing him to fall forward and receive all injuries, "entirely consistent" with the fall. There is no evidence, however, that Mikell's facial injuries, broken tooth, or cut hands were caused by a

fall rather than from an attack. Moreover, Johnson mischaracterizes the evidence by claiming Mikell did not testify that he was assaulted after he fell to the walkway. Although Mikell improperly used the term "unconscious," he made clear through his testimony that he felt himself "being beaten, compulsively beaten. . . . Hit. Punched. Kicked." Appellant's reliance on any inconsistencies is plainly misplaced on appeal. The trial court in its role as factfinder resolved any inconsistencies within Mikell's testimony, and we will not disturb that finding on appeal. See Cuffee, 61 Va. App. at 366, 735 S.E.2d at 699 (Inconsistencies in the witness' testimony generally "go toward the [factfinder's] weighing of the credibility of the witnesses, a matter within its sound discretion.").

For the reasons stated, there was sufficient evidence for the trial court to determine Johnson intended to permanently maim, disfigure, disable, or kill Mikell.

### D. ATTEMPTED ROBBERY

Appellant argues that, "[a]part from Mikell's vague recollection of someone checking his pockets as he began to regain consciousness, the Commonwealth presented no evidence that anyone attempted to take any property from Mikell." We find that no other evidence was needed.

Robbery is "the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." Williams v. Commonwealth, 278 Va. 633, 637, 685 S.E.2d 178, 180 (2009). Mikell testified that three people, whom he knew as appellant, Bell, and Smith, beat him "brutally" by sneaking up behind him moments after they passed him. The three individuals continued to beat him while he lay on the ground. One of the attackers then reached into his pants pockets, "rummaged to see if [Mikell] had any belongings, any weapons, anything like that, money." Mikell believed all his pants pockets were rummaged, and he was positive the front two were. Given the evidence that

- 8 -

Bell, Smith, and appellant attacked him in concert, it does not matter which one actually reached into his pockets. See, e.g., McMorris v. Commonwealth, 276 Va. 500, 505-06, 666 S.E.2d 348, 351 (2008) (accomplice liability exists where concert of action and shared intent or resulting crime was natural and probable consequence of wrongful act). Thus, sufficient facts support the trial court's ruling to deny the defendant's motion to strike and to find him guilty of attempted robbery.

### E. DISCLOSURE OF EXCULPATORY EVIDENCE

Appellant argues that the Commonwealth violated Brady v. Maryland, 373 U.S. 83 (1963), and its progeny by allegedly suppressing Mikell's testimony at Smith's trial and not revealing before trial that Bell would testify that he did not witness any assault or attempted robbery by appellant and Smith while Mikell was on the ground. For the reasons that follow, we find that if any error was made by the trial court in this regard, such error was harmless.

In Brady, 373 U.S. at 87, the Supreme Court of the United States held "that the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Under settled principles, there are "three components of a true Brady violation," Strickler v. Greene, 527 U.S. 263, 281 (1999), and "[t]he accused has the burden of establishing each of these three components to prevail on a Brady claim," Commonwealth v. Tuma, 285 Va. 629, 635, 740 S.E.2d 14, 17 (2013) (citing Skinner v. Switzer, 131 S. Ct. 1289, 1300 (2011)). The first two components require the evidence to be favorable to the defendant and to have been suppressed by the prosecution. The third component, as necessary as the first two, is that the defendant must prove prejudice. See Tuma, 285 Va. at 636, 740 S.E.2d at 18 (noting that, under Brady, "a defendant must show that the failure to earlier

- 9 -

disclose prejudiced him because it came so late that the information disclosed could not be effectively used at trial" (internal quotation marks omitted)).

The victim in this case, Mikell, previously testified in co-defendant Smith's case. In that matter, Mikell testified that he was punched by an unidentified person from behind and knocked unconscious. When he regained consciousness, he was no longer being attacked. At appellant's trial, Mikell testified that he was "struck in my jaw, Your Honor. I was struck in my jaw with Mr. Smith's right hand. As I was struck in my jaw, I completely blacked out." He also described being hit, punched, and kicked. He said that he "tried to get back up," but he was pushed down. He also felt someone going through his pockets. He further stated, "[W]hen I zoned back into, you know – I had – was back able to regain my consciousness, and that's when I had ran [sic] across the street . . . ." Mikell knew the name of one of the attackers, and after looking at a yearbook, he was able to identify the other two attackers, including appellant.

On cross-examination at appellant's trial, counsel clarified that Mikell "blacked out" when he fell to the ground and was "no longer able to describe events that [were] occurring around [him]." Mikell also explained that he never saw who pushed him down. He felt someone checking his pockets after he regained consciousness, but he did not see the person. During closing argument, appellant's counsel argued that the trial court should not rely on Mikell's testimony because Mikell "blacked out" and "lost consciousness."

After hearing all of the evidence and argument, the trial court found appellant guilty of malicious wounding and attempted robbery. After the conviction, appellant filed a motion to set aside the verdict. He argued that the Commonwealth erred in not providing him with Mikell's testimony at Smith's trial. He claimed that Mikell testified inconsistently because he did not state in the earlier trial who hit him, as he did in appellant's trial. Appellant argued that if

Mikell's testimony was consistent with his testimony in the previous trial, appellant would not have been convicted.

In ruling on the motion to set aside the verdict, the trial court stated that, "based on the argument that I've heard now, I do not find that my confidence in the verdict that I made then is undermined. I don't find a reasonable probability."

On appeal, appellant argues that the evidence was exculpatory and material. He contends it raises a question as to the confidence in the verdict.

"[A] constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." United States v. Bagley, 473 U.S. 667, 678 (1985).

> Evidence is material "'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Strickler, 527 U.S. at 280 (quoting Bagley, 473 U.S. at 682). However, it is not necessary to demonstrate "by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." Kyles v. Whitley, 514 U.S. 419, 434 (1995). A conviction must be reversed if the accused shows "that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Id. at 435.

Coley v. Commonwealth, 55 Va. App. 624, 631, 688 S.E.2d 288, 292 (2010) (citations omitted).

In this case, the record indicated that the trial court heard about Mikell's inconsistencies during the trial and nevertheless found his testimony to be credible. The trial court also believed Mikell's testimony over that of Bell. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval, 20 Va. App. at 138, 455 S.E.2d at 732. Assuming without deciding that the evidence was exculpatory, the fact that appellant did not receive a copy of the previous hearing's transcript does not undermine the confidence in the outcome of

appellant's trial. Mikell testified that he was unconscious after he was hit in the jaw, and appellant zealously cross-examined him on this fact. The trial court had this information when it considered whether appellant was guilty. Therefore, the trial court did not err when it denied appellant's motion to set aside the verdict.

### III. CONCLUSION

The evidence at trial was sufficient beyond a reasonable doubt to convict appellant of malicious wounding and attempted robbery. Accordingly, for the foregoing reasons, we affirm those convictions.

Affirmed.