UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, Athey and Fulton
Argued by videoconference


EDWARD WILLIAM COLES, JR.

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0930-21-2                      JUDGE GLEN A. HUFF
                                                    APRIL 19, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CAROLINE COUNTY
Sarah L. Deneke, Judge

Maureen L. White for appellant.

Justin B. Hill, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Edward William Coles, Jr., appeals his convictions, from a bench trial, of statutory burglary

and robbery, in violation of Code §§ 18.2-91 and 18.2-58.[1]  Appellant asserts that the Caroline

County Circuit Court (the "trial court") erred in finding the evidence sufficient to convict him of

statutory burglary and robbery.  For the following reasons, this Court disagrees and affirms his

convictions.

BACKGROUND

On appeal, this Court "review[s] the evidence in the light most favorable to the

Commonwealth," the prevailing party at trial.  *Clanton v. Commonwealth*, 53 Va. App. 561, 564

(2009) (*en banc*).  Accordingly, the Court must "discard the evidence of the accused in conflict with

that of the Commonwealth, and regard as true all the credible evidence favorable to the

_____

*Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant was also convicted of felony property damage and possession of a firearm
after having been convicted of a felony.  He does not challenge those convictions.

Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (*en banc*) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

In the afternoon on May 13, 2020, Susan Zeller was sitting in her living room when appellant opened her front door. Susan did not know appellant and yelled at him to "get out of [her] house." Appellant said, "[Y]ou're just tripping," and left. Susan locked the door behind him, grabbed her phone, and fled out the back door to the garden where her husband, Frederick Zeller, was working.

Susan told Frederick that a man had just come into their home. Frederick told Susan to call 911, and he went inside to investigate. Frederick did not see anyone at the house, and he retrieved his nine-millimeter Ruger from their first-floor bedroom. The Ruger was loaded with Remington target ammunition and holstered. After retrieving his gun, Frederick heard a noise. He ventured into the living room and saw that the door had been broken. The molding was cracked and the door-jam and frame torn.

Frederick heard noises upstairs so he went to the staircase and shouted for the person to get out. Frederick heard movement and saw appellant descend the stairs. Frederick repeatedly demanded that appellant leave, but appellant refused. Appellant then asked Frederick if he had a gun and began to walk toward Frederick. Frederick recently had been hospitalized and was unable to run, but he turned and walked away as fast as he could. Appellant followed and continued yelling at Frederick as they traveled out of the house. Eventually, appellant caught up with Frederick and grabbed him from behind. A struggle for the gun ensued. When appellant disarmed Frederick, Frederick believed he was going to die.

While Frederick was inside the house, Susan spoke with a 911 dispatcher who asked Susan what kind of car appellant drove. As Susan approached the vehicle, she saw Frederick and

- 2 -

appellant leave the house and appellant disarm Frederick. Moments later, Frederick reached Susan. Frederick began to relate to the 911 dispatcher what just occurred. As Frederick was relating his encounter, he heard multiple gunshots.

When Caroline County Sheriff's Deputy Michael Dan Holmes arrived at the Zellers' residence, Frederick explained to him that he had been in a physical altercation with a large man, who had taken his firearm and was now in the residence. Deputy Holmes told Frederick to go to the wood line at the back of the residence, and he waited behind his patrol car until other units arrived.

As Deputy Holmes waited, appellant appeared in the entry way to the porch area of the residence and had a small black firearm in his hand. Deputy Holmes ordered appellant to drop the handgun and come outside. After twenty to thirty seconds, appellant retreated inside. Deputy Holmes testified that appellant stood ten to fifteen yards away from him at the time of this exchange.

Caroline County Sheriff's Deputy Jason Miller arrived shortly thereafter as backup. Moments later, appellant exited the residence naked. After the officers arrested appellant, Deputy Miller spoke with Susan and Frederick and began investigating the scene.

Appellant's black sedan was parked outside the residence. There was a large hole in the car's front passenger-side window and several spent Remington nine-millimeter shell casings in the seats. There was also a bullet hole in the center of the sedan's dashboard

Inside the house, deputies retrieved a Ruger nine-millimeter handgun and a magazine on the floor of a small room downstairs. In the living room, deputies found bullet-entry holes and recovered spent nine-millimeter bullets. Deputy Miller testified that "[i]f you were to draw a line from the hole in [the car's passenger-side] window to the house where the bullet holes were entering the house, it would be a straight line." Police found appellant's clothes in a small room upstairs.

Upon the conclusion of the Commonwealth's evidence, appellant made a motion to strike, arguing that the Commonwealth failed to prove his intent to steal as to the robbery charge. He claimed no evidence showed he intended to flee with the gun. He emphasized that the gun was recovered in a separate room from where his clothes were and nothing else was missing from the house. As to the statutory burglary charge, appellant argued the Commonwealth failed to show that he intended to commit larceny, assault and battery, or some other felony. He noted again that nothing was missing in the house. Additionally, the struggle for the gun occurred outside the home and he claimed that he only took the firearm because he feared he would be shot. The trial court denied the motions to strike as to the burglary and robbery charges.

Appellant then testified in his own defense, giving his own version of the events. He stated that he was traveling from Washington, D.C., to Henrico County, Virginia, on business. Having never traveled that far south, he relied completely on his phone's GPS. As he was driving, he realized that his phone was not charging but was in fact dead. He got off Interstate 95 and looked for a place where he could charge his phone. First he stopped at a McDonald's, but because of the COVID-19 pandemic, the dining room was closed. Then appellant tried to charge his phone at the Exxon gas station across the street, but the store was closed. While pumping gas at the Exxon, a woman informed appellant that he could charge his phone at a guard post to a gated community not far from the gas station. He tried to follow the woman's directions but almost immediately got lost, and he pulled off onto a gravel driveway.

As he sat in the driveway attempting to charge his phone, a man knocked on his window. Thinking that the man may be able to help him, he rolled down his window. The man, who he claimed was Frederick, asked appellant what he was doing. Appellant began to explain that he was lost and needed to charge his phone. But before he could finish Frederick unholstered the gun on his hip and pointed it at appellant. Appellant, who was afraid of guns after being shot in 2014,

jumped over to the passenger seat and grabbed the passenger door. At the same time, appellant heard the first shot hit his dashboard, and he jumped out of the car. The second shot broke the passenger window.

Appellant further claimed that he hurried to a nearby house to ask for help. Susan opened the door but when appellant told her that Frederick was shooting and asked her to call the police, she immediately started screaming and ran past appellant. Appellant entered the house and began looking for a phone. Appellant looked back and saw that Frederick was coming into the house, so he ran upstairs. Frederick was yelling, but appellant could not understand what he was saying. Appellant then came back downstairs and saw no one. He looked out the front door and saw the police, who were telling him to drop the gun and come out with his hands up. Appellant testified that he did not have a gun and held only his cell phone in his hand. Appellant decided that he should take off all his clothes to show the officers that he was not armed and ensure that he did not get shot. Appellant testified that he entered the house because he feared for his life.

On cross-examination, appellant acknowledged that the police found a rolled-up cigarette containing marijuana in his car. He denied that he smoked it while driving or that it was dipped in anything and further claimed that he had not consumed any drugs.

On rebuttal, the Commonwealth called Caroline County Sheriff's Deputy Erin Cardoso. Deputy Cardoso testified that she witnessed appellant exit the Zellers' house naked. She checked on appellant's welfare after the police placed him in a car. When she asked him what had happened, he responded that "it was the drugs."

The trial court denied appellant's renewed motion to strike. The trial court found Frederick's and Susan's testimony more credible than appellant's testimony. It also found that appellant first walked through an unlocked door and then, after being asked to leave, he returned and broke through the door Susan had locked behind him. Despite appellant's claim that he took

the gun only to protect himself, the trial court found the evidence "contrary" to the story. The court noted that appellant did not attempt to disassemble the gun or make it unusable by tossing it away. Ultimately, the trial court convicted appellant of statutory burglary, robbery, felony property damage, and possession of a firearm and sentenced him to seventeen years' incarceration, with nine years suspended. This appeal followed.

ANALYSIS

Appellant challenges the sufficiency of the evidence to convict him of statutory burglary and robbery. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"[T]he credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." *Fletcher v. Commonwealth*, 72 Va. App. 493, 502 (2020) (quoting *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999)). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to

conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).

"[T]he 'fact finder may infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts.'" *Brown v. Commonwealth*, 68 Va. App. 746, 788 (2018) (quoting *Robertson v. Commonwealth*, 31 Va. App. 814, 820 (2000)). "[W]hether the required intent exists is generally a question of fact for the trier of fact." *Smith v. Commonwealth*, 72 Va. App. 523, 536 (2020) (quoting *Brown*, 68 Va. App. at 787).

## A. Burglary

Appellant asserts that the evidence was insufficient to convict him of statutory burglary. He argues that the Commonwealth failed to prove he entered the Zellers' home with the intent to commit larceny or any other felony. Instead, he claims, his testimony proved that he entered the house because he was fleeing from Frederick, who threatened him with a gun. He says, under his version of events, he made no threats upon entering the house, demanded nothing from the Zellers, and left immediately when asked. He further argues that the drugs he consumed triggered a state of paranoia, causing him to act erratically, so he entered the home to obtain assistance. Consequently, appellant concludes, the evidence was insufficient to convict him of statutory burglary. But appellant's actions—and the trial court's rejection of his version of the events—demand the opposite conclusion.

"If any person . . . in the daytime breaks and enters or enters and conceals himself in a dwelling house . . . with intent to commit murder, rape, robbery or arson . . . he shall be deemed guilty of statutory burglary." Code § 18.2-90. "If any person commits any of the acts mentioned in § 18.2-90 with intent to commit larceny, or any felony other than murder, rape, robbery or arson . . . he shall be guilty of statutory burglary." Code § 18.2-91.

The accused's "intent is usually proved by circumstantial evidence." *Slaughter v. Commonwealth*, 49 Va. App. 659, 667 (2007). "In burglary cases, the fact finder may infer from the entry that the purpose of the illegal entry was unlawful." *Id.* "Further, '[i]n the absence of evidence showing a contrary intent, the trier of fact may infer that a person's unauthorized presence in another's house was with the intent to commit larceny.'" *Id.* (quoting *Sandoval v. Commonwealth,* 20 Va. App. 133, 138 (1995)).

Under appellant's version of events, he never intended to commit any felony. The trial court, however, rejected his version of events as incredible. *Flanagan*, 58 Va. App. at 702 ("In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." (quoting *Marable*, 27 Va. App. at 509-10)). The trial court instead found that appellant initially entered the home through an unlocked door. When Susan asked appellant to leave, he did, and she immediately locked the door behind him. Moments later, however, appellant broke through the now locked door and again entered the house. He initially went upstairs but then came downstairs, got in a physical altercation with Frederick, and took his gun. This evidence was sufficient to establish appellant entered the Zellers' home illegally and for the trial court to infer that appellant entered with unlawful intent. Thus, this Court will not disturb this finding of fact on appeal.

## B. Robbery

Appellant asserts that the evidence was insufficient to convict him of robbery. He argues that the Commonwealth failed to prove that he intended to permanently deprive Frederick of his firearm. Rather, he says he intended only to temporarily deprive Frederick of his firearm for his own safety. He emphasizes that he did not attempt to leave with the firearm and instead left the gun in the house when he exited naked. Accordingly, appellant argues, the robbery conviction should be reversed.

"In Virginia, robbery is a common law crime proscribed statutorily by Code § 18.2-58 and defined as the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." *Anderson v. Commonwealth*, 52 Va. App. 501, 507 (2008) (quoting *Jay v. Commonwealth*, 275 Va. 510, 524 (2008)).

The intent to steal—or *animus furandi*—"is an intent to feloniously deprive the owner permanently of his property." *Pierce v. Commonwealth*, 205 Va. 528, 533 (1964). A factfinder may divine that intent by inferring it "from the [accused's] asportation and conversion of the property, in the absence of satisfactory countervailing evidence introduced by the defendant." *Clay v. Commonwealth*, 30 Va. App. 254, 261 (1999). Moreover, "[i]ntent is the purpose formed in a person's mind at the time an act is committed." *Carter v. Commonwealth*, 280 Va. 100, 105 (2010) (quoting *Commonwealth v. Taylor*, 256 Va. 514, 519 (1998)). Intent "may occur momentarily" and "does not have to exist for any particular length of time." *Commonwealth v. Jones*, 267 Va. 284, 289 (2004) (quoting *Durham v. Commonwealth*, 214 Va. 166, 169 (1973)). "Intent may, and often must, be inferred from the facts and circumstances of the case, including the actions of the accused and any statements made by him." *Carter*, 280 Va. at 105 (quoting *Stanley v. Webber*, 260 Va. 90, 96 (2000)).

Crucial here, a person may act with multiple intents or purposes. *See Holley v. Commonwealth*, 44 Va. App. 228, 237-38 (2004). For example, an assailant in a tussle with a victim over a firearm may intend to "deprive the [victim] wholly of the [victim's] pistol," indicating a robbery, even while "the assailant[,] on snatching the pistol[,] may also have intended to prevent its being used against [him]." *See, e.g., Jordan v. Commonwealth*, 66 Va. 943, 948 (1874). "Both intents may have existed at the time." *Id.* Appellant's argument misses this point.

Although appellant says he took the gun only to prevent Frederick from using it against him, the trial court found the facts contradicted that argument. Appellant walked down the stairs and found Frederick with a holstered gun. Appellant asked Frederick about the gun, approached him, and subsequently disarmed him. Appellant did not throw the gun away or simply keep Frederick from using it. Instead, appellant kept the gun until police arrived—and even fired the gun into the Zellers' home. Because a rational factfinder could conclude this evidence was sufficient to show appellant intended to keep the firearm when he disarmed Frederick, this Court will not disturb the trial court's judgment on appeal.

## CONCLUSION

The evidence at trial was sufficient to prove appellant entered the home with the intent to commit a larceny or felony therein and to prove that appellant intended to permanently deprive Frederick of his firearm. Accordingly, this Court affirms appellant's burglary and robbery convictions.

*Affirmed.*